Dr. John H. HAZARD, Plaintiff,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendant and Third-Party Plaintiff,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Third-Party Defendant.

Civ. A. No. 1567–65.

United States District Court
District of Columbia.

April 28, 1966.

Richard W. Galiher, Washington, D. C., for plaintiff.

John L. Laskey, Washington, D. C., for defendant and third-party plaintiff.

J. Joseph Barse, Washington, D. C., for third-party defendant.

YOUNGDAHL, District Judge.

The above-entitled action seeking a declaratory judgment that the defendant Aetna Casualty and Surety Company (hereinafter Aetna) owes the plaintiff an unqualified defense in a personal injury action now pending against him in this Court and is obligated to pay any judgment that may be rendered against him

in that action, as well as costs of this suit, including reasonable attorneys' fees, came on for trial without a jury on March 29, 1966. The defendant has impleaded United States Fidelity and Guaranty Company (hereinafter U. S. F. & G.) seeking a declaration that the latter alone is obligated to defend the plaintiff and to pay any judgment which may be rendered against him, and that the latter is liable for costs, including reasonable attorneys' fees, incurred in the instant action.

The following facts appear without dispute. The plaintiff is a physician licensed to practice medicine in the District of Columbia who maintains an office at 3409 Wisconsin Avenue, N. W., Washington, D. C. On March 6, 1961, while he had an owners', landlords' and tenants' policy in force with the defendant Aetna and a physicians', surgeons' and dentists' policy in force with the third-party defendant U. S. F. & G., one of his patients, Elwood W. King, who had come to his office to receive medical treatment, there sustained certain personal injuries. In a suit thereafter filed in this Court by Mr. King and his wife, Civil Action No. 2920–62, the defendant Aetna has refused to defend the plaintiff, while the third-party defendant, U. S. F. & G., has defended him.

Although Mr. King's account of his fall differs from the plaintiff's, the plaintiff and the defendant have agreed that for the purposes of this lawsuit the plaintiff's version of the accident may be accepted as true. According to this version, while Mr. King, a polio victim, was within a treatment room, the plaintiff took Mr. King's crutches from him and helped him from a chair to a stool; while the plaintiff was thereafter waiting for his nurse an arm's length away, Mr. King shifted his position on the stool, whereupon it slid out from under him, causing him to fall to the floor and thereby to sustain certain injuries.

### I. The Principal Complaint

The outcome of this suit turns upon the interpretation of a crucial provision in the insurance policy between the plaintiff and the defendant which reads in part as follows:

> With respect to such insurance as is afforded by this policy, the Company shall * * * defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. * * *

Although this provision may be interpreted as limiting the duty to defend strictly to those cases where, under some possible version of the facts, ultimate financial liability can be said to rest upon Aetna as a matter of law, the Court believes that an alternative interpretation exists which is more nearly in harmony with the broad assurance embodied in the provision that Aetna will defend the plaintiff. According to this interpretation, a possibility that some version of the facts may give rise to ultimate financial liability under the policy is sufficient to create the duty to defend.

The defendant has argued that the policy's exclusion of coverage for "injury, sickness, disease, death or destruction due to the rendering of or failure to render any professional service" shows that the accident involved in this case is not covered and that no duty to defend therefore arises. However, if one thing is certain in this case, it is that there is a "gray area" lying at the fringes of the policy where a given accident may be seen as the result of either the ordinary negligence of a property owner or of the improper rendering of or failure to render professional services. The cases cited by both parties in briefs submitted during and after the trial indicate that the accident involved in this case lies in this "gray area." Compare D'Antoni v. Sara Mayo Hospital, 144 So.2d 643 (La. Ct.App. 1962) (accident resulting from failure to raise side rails on hospital bed held covered by Aetna owners', landlords' and tenants' policy), with Harris v. Fireman's Fund Indemnity Co., 42 Wash.2d 655, 257 P.2d 221 (1953) (accident resulting from collapse of osteopath's table held not covered by owners', landlords'

and tenants' policy). Because a possibility exists that the defendant will be legally obligated to reimburse the plaintiff for a judgment rendered against him in the pending personal injury action, the defendant must give the plaintiff a complete and unqualified defense in that action.

This disposition of the case on the issue of Aetna's duty to defend leaves open for decision at the most appropriate time, the conclusion of the trial in the pending personal injury action, the question of whether the defendant is legally obligated to reimburse the plaintiff for any judgment which may be rendered against him therein. Should he prevail in that action, the issue of whether Aetna is required to reimburse him will of course become moot. On the other hand, should he be unsuccessful, the Court and jury will be able to determine, on the basis of all the evidence adduced at a full trial, exactly how the accident occurred and whether Aetna, U. S. F. & G., or both are obligated to pay the judgment.

■ The plaintiff has asked for a judgment awarding him the costs of this action, including reasonable attorneys' fees. This request was not mentioned during the trial, and no argument relating to it—either oral or in briefs—has been made at any time. The Court is unable on its own initiative to find any justification either in the insurance policy in question or in the general law for departing in this case from the ordinary rule which disallows awards of attorneys' fees and therefore will not award them here.

### II. The Third-Party Complaint

The third-party defendant, U. S. F. & G., moved prior to trial to dismiss the third-party complaint against it, claiming that it was not a party who, in the language of Federal Rule of Civil Procedure 14(a), "is or may be liable to * * * [the defendant] for all or part of the plaintiff's claim against him." That motion has been renewed at this time.

No argument to assist the Court has been offered by the defendant, third-party plaintiff, either during the trial or in its briefs. The Court has, however, on its own initiative carefully considered the third-party complaint, despite its doubts as to whether the defendant is seriously concerned with the matter. No contract exists between the defendant and U. S. F. & G. upon which liability for the plaintiff's claims may be based. Nor does any kind of tort liability exist between the two insurers. Instead, as stated by Aetna in its "Memorandum of Points and Authorities in Opposition to Motion to Dismiss," the only possible validation for the third-party claim lies in the fact that it "is a derivative one and under the subrogation clause of the policy issued to the plaintiff, this defendant is entitled to claim from the third-party defendant all or part of the plaintiff's claims against it."

■ In the light of the full defense which the third-party defendant is giving the plaintiff in the pending personal injury action and the absence at this point of any indication that it will not continue to do so or that it will not pay any judgment rendered against the plaintiff which it is legally obligated to pay, the third-party complaint is completely premature and conjectural. The complaint will therefore be dismissed, without prejudice, of course, to the issues raised in it being reopened at a later time.

Let this memorandum be considered the Court's findings of fact and conclusions of law.