The judgments entered February 5, 1968, will be affirmed.

---

**Louis ZAVOTA et al., Plaintiffs,**

**v.**

**OCEAN ACCIDENT & GUARANTEE CORPORATION Ltd., et al., Defendants, Appellees.**

**Maryland Casualty Company, Plaintiff, Appellant.**

**No. 7203.**

United States Court of Appeals
First Circuit.

April 4, 1969.

---

ed, * * * if the performance so rendered was

(a) a part or all of a performance for which the defendant bargained; * * *
. * * * * *
"(2) Interest at the legal rate, on the value of the performance as to which restitution in money is adjudged, may be given from the date of receipt of the performance."

Comments b and c of § 347 include this language:

"b. * * * In granting restitution as a remedy for breach, however, the purpose to be attained is the restoration of the injured party to as good a position as that occupied by him before the contract was made. * * * [I]n the great majority of cases this remedy merely requires a payment in money by the defendant of the value of the consideration received by him from the plaintiff as a part or full performance of the contract. The consideration so received may be of any kind, commonly consisting of services rendered, * * *.

"c. If the plaintiff's performance is part of the very performance for which the defendant bargained as part of an agreed exchange, it is to be valued, not by the extent to which the defendant's total wealth has been increased thereby, but by the amount for which such services and materials as constituted the part performance could have been purchased from one in the plaintiff's position at the time they were rendered."

Section 468(1) of the Restatement of Contracts, cited by the learned trial judge, is an application of the basic principle stated in the above-quoted § 347(1). Section 468(3) and the comment thereon (d), relied on by defendant, applies where there has been "no fault on either side," which is not the situation presented in this record. The language in most of the sections of Chapter 14 of the Restatement of Contracts governing IMPOSSIBILITY makes clear that the rules there stated apply "in the absence of * * * contributing fault on the part of the person subject to the duty" (or "of the promissor"). See §§ 458–461.

7. Additional work was required of the architect by changes in the owner's plans made in August 1965.

Bruce M. Selya, Providence, R. I., with whom Raymond A. LaFazia, Providence, R. I., was on brief, for appellant.

John F. Dolan, Providence, R. I., for Ocean Accident & Guarantee Corp., Ltd., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This declaratory judgment proceeding involves a dispute between two insurance carriers as to coverage and the attendant obligation to assume the defense of a law suit.  The salient facts may be briefly

stated. On October 10, 1962, Edward Kleis, a truck driver for Pfaff & Kendall, Inc., was injured while Louis Zavota was loading materials from a freight car on to a Pfaff & Kendall trailer truck. He was using a crane owned by Zavota Bros., a Rhode Island corporation, to do the loading. Thereafter, Kleis sued both Zavota Bros. and Louis Zavota for damages alleging that his injuries were caused by their negligence. The Pfaff & Kendall vehicle was insured by Ocean Accident & Guarantee Corporation, Ltd. under an automobile fleet policy which contained an omnibus insured clause and a conventional loading and unloading stipulation. Zavota Bros. had a general liability policy referred to as a manufacturers' and contractors' or M & C policy as well as an automobile liability policy with Maryland Casualty Company.

Tender of the Kleis suit was made to both insurers. Ocean Accident disclaimed coverage and denied any obligation to defend. Maryland answered the complaint, reserving its rights as to Louis Zavota. Then, in conjunction with Louis Zavota and Zavota Brothers, Maryland brought the instant proceeding against Ocean Accident seeking a construction of the three policies and a declaration that Ocean Accident was obliged to defend both Zavota Bros. and Louis Zavota in the negligence suit.

The district court, sitting without a jury, found, inter alia, that all three policies cover both Zavota Brothers and Louis Zavota with a pro rata obligation to satisfy any judgment obtained by Kleis against them; also, that there is a concurrent responsibility under these policies to defend the suit. Only Maryland appealed. It contends that the district court erred in finding concurrent coverage under its two policies and also in excluding certain expert testimony which it claims would have established the non-applicability of its automobile policy.

We consider first the M & C policy. There is no question that this policy cov-

ers the named insured, Zavota Bros. The only issue is whether it also covers Louis Zavota. In the policy the term "insured" is defined as follows:

> "With respect to the insurance under coverages A, B and D the unqualified word 'insured' includes the named insured *and also includes any executive officer, director or stockholder thereof while acting within the scope of his duties as such. * * * *"* (Italics ours)

■ It is undisputed that at all times here relevant Louis Zavota was vice president, a director and a one-third stockholder of the corporation. The critical question is whether at the time of the accident he was "acting within the scope of his duties as such." Maryland offered no concrete evidence as to the scope or limits of Louis Zavota's duties as an executive officer of the corporation. Instead it contended that "function is determinative" and that operating a crane is incompatible with acting in an executive capacity particularly where there were no other Zavota employees on the job site at the time of the accident.[1]

We think Maryland has an erroneous understanding of the definition-of-insured clause. Any employee of a corporation whose negligent act imposes ordinary tort liability on his employer is himself personally liable to the third party, if the third party chooses to sue. Normally employees are not sued—the corporation is richer, as well as a better target. However, a corporate officer might be a useful defendant, and consequently may be in need of insurance. The purpose of a clause like the present, in our opinion, is to protect the officer against suits wherever his conduct is such, in relation to the corporation, that the corporation would be liable. Since, by hypothesis, the insurer covered such an accident anyway, there is no great cost to it to broaden the definition of its insured; indeed, the contrary result

1. In addition to the three Zavota brothers, the corporation had approximately twenty-five employees.

would be in the nature of a windfall to it.

Maryland, in opposition to such construction, stresses the presence of the words "as such." *Cf.* Curran v. Security Ins. Co., 194 F.Supp. 727 (W.D.Ark.) s. c. 195 F.Supp. 562, appeal dismissed 296 F.2d 733 (8th Cir. 1961). We hold, however, consistent with the rule that policies are to be construed against the insurer, that the purpose of these words is simply to avoid any claim that the officers, etc. have comprehensive individual coverage. We agree that they do not. If the officer's conduct would not impose liability on the corporation, the officer, also, is not within the policy. But whether this was his normal work, or whether it was specially assigned to him in his officer's capacity, is irrelevant. If his act imposed liability on the corporation, the officer has the insurer's protection; otherwise not.

As its second major point Maryland asserts that it is not liable under its automobile policy. During the trial it called as an expert witness the president of C. D. Paige Company, the general agents who issued the policy, to show that the parties intended that this policy was to cover the crane only while it was in locomotion. Through this witness Maryland proposed to show that the M & C policy and the automobile policy were issued as part of an insurance program: the former to cover the crane while stationary, the latter while it was being transported. He was also called to testify that custom and usage did not permit writing one without the other, to explain the manner in which premiums were charged and to show his personal role in the issuance of these policies. The district court refused to allow this testimony on the ground that it violated the parol evidence rule and it rejected Maryland's offer of proof for the same reason. We do not think this was error.

Maryland challenges the district court's ruling on four grounds. First, it argues that its two policies are fundamentally inconsistent in that both appear to cover the crane; that this constitutes a latent ambiguity and parol evidence is admissible to resolve it. But this argument fails because the policies admit of no ambiguity, latent or patent, and oral evidence will not be received to create ambiguity where none existed before. See East & West Insurance Co. v. Fidel, 49 F.2d 35, 38 (10th Cir. 1931). There is nothing irregular in taking out more than one policy to cover the operations of a business, particularly where there are significant variations in the coverage.[2]

Maryland next argues that parol evidence is admissible for the purpose of connecting two or more written instruments and showing that they form a part of a single transaction. The short answer is that a reading of the two policies shows that there is nothing in either which connects one with the other. The automobile policy clearly covers the crane.[3] The M & C policy, on the other hand, insures Zavota Bros. "against accidents arising out of the ownership, maintenance or use of premises, *and all operations.*" (Italics ours) There is nothing in the writings to suggest a mutual connection with the subject matter.

Maryland's last two challenges may be considered together. It contends that parol evidence is admissible to show the intention of the parties in reaching agreement on the policies and to show

---

2. The named insureds, effective dates and coverage of the two policies were different.

3. The policy provides as follows:
   "*Coverage A—Bodily Injury Liability*
   To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

   The crane that Louis Zavota was using at the time of the accident was specifically listed in Automobile Schedule B of the policy as Auto-car C795—Crane.

custom and usage of the trade in interpreting such things as premium rates and the nature of other insurance carried. The offer of proof shows and the district court found that both of these arguments are predicated on treating the two policies as a single transaction. Since we have already disposed of this contention, these last two arguments fail.[4]

Affirmed.

4. In oral argument Maryland relied heavily on Golden Gate Corp. v. Barrington College, 98 R.I. 35, 199 A.2d 586 (1964), but in view of our discussion of these last two challenges to the trial court's ruling we do not think *Golden Gate* is applicable.