Robert J. SHERMAN, Appellant,

v.

AMBASSADOR INSURANCE
COMPANY.

No. 80–2011.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 9, 1981.

Decided Dec. 15, 1981.

John W. Karr, Washington, D.C., for appellant.

Richard W. Galiher, Jr., Washington, D.C., with whom Richard W. Galiher, William H. Clarke, Frank J. Martell and William J. Donnelly, Jr., Washington, D.C., were on the brief for appellee.

Before WRIGHT, TAMM and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge, HARRY T. EDWARDS.

Separate opinion, concurring in part and dissenting in part, filed by Circuit Judge TAMM.

HARRY T. EDWARDS, Circuit Judge:

From August 1972 until approximately June of 1975, appellant, Robert J. Sherman, M.D., a practicing gynecologist, owned and operated an abortion clinic (named "Columbia Family Planning Clinic, P.C." [hereinafter "Clinic"]) in Washington, D.C. In March of 1975, one of the patients at the Clinic, a Rita McDowell, died as a result of an abortion performed by Dr. Sherman. In June of 1975, a wrongful death action was filed in the District of Columbia Superior Court by the mother of Ms. McDowell against

(1) Robert J. Sherman, individually and trading as Columbia Family Planning Clinic and Counselling Service, P.C.,

(2) Columbia Family Planning Clinic and Counselling Service, P.C., a corporation, and

(3) Dr. Robert J. Sherman, P.C., a corporation.

See Complaint in McDowell v. Sherman, Civil Action No. 5783–75 (D.C.Super.Ct.).[1] In September or October of 1976, following a jury trial in Superior Court, the plaintiff's claim in McDowell was settled for $525,-000.00.

Subsequently, in March of 1979, Dr. Sherman initiated a diversity action in the United States District Court for the District of Columbia against appellee, Ambassador Insurance Company [hereafter "Ambassador"]. In his diversity action, Dr. Sherman alleged that, at the time of Ms. McDowell's death, his abortion Clinic had been covered by a medical malpractice insurance policy issued by Ambassador, and that appellee had "deliberately and wrongfully withheld

---

1. The Superior Court suit hereafter will be referred to as "McDowell." The Complaint in the McDowell case is reprinted at Appendix (A.) 318.

The transcript of the proceedings and other records in McDowell were sealed pursuant to court order sometime during the Fall of 1976. As a consequence, we have been unable to determine the precise date of the termination of the proceedings in McDowell.

the monies which it was required to contribute under the terms of the malpractice policy." A. 7–8.[2]

During the course of proceedings before the District Court, Dr. Sherman filed a Motion for Summary Judgment, claiming that Ambassador had breached its duties to defend and indemnify him under the applicable insurance policy. A. 282–88. In response, Ambassador filed a Cross-Motion for Summary Judgment, claiming that it owed no duty to Dr. Sherman because he was not a named insured on the policy. A. 344–46. In a Memorandum opinion dated July 21, 1980, *Sherman v. Ambassador Insurance Co.*, No. 79–1039 (D.D.C. July 22, 1980), the District Court found that "Ambassador's duty was to the named insured, Columbia Family Planning Clinic, P.C., and not to a non-insured party, Sherman." A. 494. The trial court also found that "Ambassador had no duty to Sherman individually in the McDowell suit, and it satisfied its obligation to the named insured" by successfully moving to quash service of process on the "Columbia Family Planning Clinic and Counselling Service, P.C." *Id.* Accordingly, the District Court granted Ambassador's Cross-Motion for Summary Judgment. A. 495. It is from this judgment that Dr. Sherman appeals.

After careful review of the record in this case, we reverse in part and remand for further proceedings before the District Court. The bases for our reversal are threefold. First, we reject as a matter of law the District Court's finding that Dr. Sherman was not covered under the insurance contract with Ambassador. The insurance policy in force at the time of Ms. McDowell's death covered "Columbia Family Planning Clinic, P.C.," including "any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such." A. 414–15. It is undisputed that Dr. Sherman was an executive officer and director of the Clinic. *See, e.g.*, A. 278–79 and A. 431.

Second, we reject as a matter of law the District Court's finding that Ambassador had no duty to defend Dr. Sherman in the *McDowell* action. Under the terms of the insurance policy, Dr. Sherman was owed a defense for actions taken in his administrative capacities as executive officer and director of the Clinic.

Finally, we reject the finding of the District Court that Ambassador was entitled to summary judgment. We cannot find, as did the trial court, that there were no genuine issues of material facts. In particular, we note that, on remand, the District Court must determine whether the Complaint in *McDowell* raised any claims of administrative negligence, and, if so, whether any portion of the $525,000.00 award paid to plaintiff in *McDowell* was attributable to acts of administrative negligence by Dr. Sherman.

We affirm the decision of the District Court only insofar as it holds that Ambassador had no duty to indemnify Dr. Sherman for his professional (*i.e.*, nonadministrative) acts as a practicing physician at the Clinic.

## I. Background

Dr. Sherman practiced medicine in Washington, D. C. as a gynecologist and obstetrician from 1957 to 1977. He headed the Columbia Family Planning Clinic, located at 1835 Eye Street, N.W., which was operated for the performance of out-patient abortions.[3] In addition to Dr. Sherman, the Clinic included two physicians, who worked occasionally as "independent contractors," and three assistants.

In March 1975, Dr. Sherman unsuccessfully performed an abortion on Rita C.

---

**2.** In his Complaint in this case, Dr. Sherman alleged that, because of Ambassador's failure to indemnify him, he was required to pay $118,000.00 of his personal funds in order to settle the plaintiff's claim in *McDowell*. A. 8. During the proceedings before the District Court, Dr. Sherman's attorney argued that his client was forced to pay $133,000.00 of his own funds in order to settle in *McDowell*. Transcript of Hearing, held on July 18, 1980, at A. 471–72.

**3.** In Plaintiff's Answers to Interrogatories, Dr. Sherman stated that he "was the President of Robert J. Sherman, M.D., P. C. of which Columbia Family Planning Clinic was the operational arm." A. 16.

McDowell at his Clinic. Five days later, Ms. McDowell died at D.C. General Hospital. As a result of her death, Rita McDowell's mother, Lupe M. McDowell, filed the aforecited wrongful death action in *McDowell v. Sherman*. The complaint in *McDowell* charged Dr. Sherman with the following acts of negligence:

 a. failure to obtain informed consent;

 b. failure to obtain adequate history;

 c. failure to perform adequate examination and determine risk potential;

 d. use of unsterile equipment;

 e. failure to provide and maintain adequately trained staff, or adequate laboratory equipment and surgical equipment;

 f. abandonment;

 g. inadequate and improper aspiration suction procedure;

 h. abortion procedure requiring hospitalization performed in out-patient clinic without requiring hospital admission;

 i. performance of aspiration suction subsequent to time allowed by rules and regulations of the District of Columbia;

 j. failure to order hospitalization;

 k. improper and inadequate post-operative instruction;

 *l.* improper and inadequate post-operative examination; and

 m. failure to consult and refer to other specialists.

A. 320.

Prior to the actual trial of the *McDowell* suit, Ambassador's Claims Manager, Mr. Doliner, acknowledged, by letter dated July 11, 1975, that the insurer had received a copy of the Summons and Complaint and had retained an attorney, Arthur V. Butler, who would "appear for and defend [the Clinic] in [the *McDowell*] action." A. 429–30.[4] In another letter, also dated July 11, 1975, the Claims Manager gave notice that it was Ambassador's position that the insurance policy "coverage as afforded Robert J. Sherman applie[d] only to his acts as administrator of Columbia Family Planning Clinic." A. 431.

On July 22, 1975, Ambassador moved to quash service of process on "Columbia Family Planning Clinic and Counselling Service, P. C." A. 327. This motion was based on an affidavit from Dr. Sherman stating that "Columbia Family Planning Clinic and Counselling Service, P. C." was not a valid existing corporation in the District of Columbia and that he was not an officer, agent, or employee of such corporation.[5] The Motion to Quash was granted by the Superior Court, without objection from plaintiff, and plaintiff never thereafter sought to amend the complaint or to attempt service on the "Columbia Family Planning Clinic."[6] The trial in *McDowell* did, however, proceed against Dr. Sherman individually and trading as Columbia Family Planning Clinic and Counselling Service, P. C., and against Dr. Sherman, P. C., a corporation.

It is noteworthy that the Motion to Quash was sought by Ambassador's counsel solely because "Columbia Family Planning Clinic and Counselling Service, P. C." "was not an existing corporation within the District of Columbia." Letter from Arthur V. Butler, Esq. to Elliot Doliner, Claims Manager. A. 334. In other words, Ambassador's counsel

---

**4.** This letter also stated that Ambassador would "do all in [its] power to protect [the Clinic's] interest." A. 430.

**5.** The dissent suggests that, in his affidavit, Dr. Sherman somehow admitted that he was "not an 'executive officer or director' *of the Clinic*" (emphasis added). In fact, what Dr. Sherman did was to state that the "Columbia Family Planning Clinic and Counselling Service, P. C." was not a valid existing corporation in the District of Columbia, and that he was not an officer of *that named entity*. Dr. Sherman never stated, as the dissent suggests, that he was not an executive officer or director *"of the*

Clinic." Indeed, the record indicates that appellee has never denied that Dr. Sherman was in fact an executive officer or director of the Clinic.

**6.** The original Ambassador insurance policy, written in 1972, covered the "Columbia Family Planning Clinic, Inc.," including "any partner, executive officer, director, or stockholder thereof while acting within the scope of his duties as such." A. 397, 404. In 1974, the named insured was corrected by deleting "Inc." and inserting "P. C." A. 410.

did not claim that the insured had been misnamed in the complaint; rather, he merely asserted that the insured was not a "corporation" within the District of Columbia. *Id.*[7] Indeed, Ambassador's counsel assumed that there was an insurance policy in force covering "Columbia Family Planning Clinic and Counselling Service, P. C.," but that the policy did not provide any personal malpractice insurance for Dr. Sherman. A. 335.

Although officials at Ambassador apparently understood that the insurance policy covered the Clinic, including the administrative acts of Dr. Sherman, Ambassador's counsel nevertheless was instructed to withdraw from the *McDowell* suit after the Motion to Quash had been granted. A. 45. Ambassador's attorney was specifically told to "monitor" the action against Dr. Sherman, but not to defend it. A. 256.[8]

Dr. Sherman retained his own counsel to represent him in his defense in the *McDowell* litigation. Ambassador never offered any defense for Sherman after the Motion to Quash had been granted. At the conclusion of the *McDowell* trial, the jury returned a verdict of $392,000.00 in compensatory damages. Settlement was later reached in the amount of $525,000.00, in lieu of a further trial on the issue of punitive damages.[9] Dr. Sherman had personal insurance, with insurers other than Ambassador, which covered a large portion of the $525,000.00 settlement. However, he was required to pay between $118,000.00 and $133,000.00 from his personal funds, *see* note 2 *supra*, to fully satisfy the claim in *McDowell*. It is this amount, plus $500,000.00 in punitive damages, attorney's fees and costs, that he seeks in the present suit against Ambassador.

## II. Dr. Sherman's Coverage Under the Insurance Policy

### A. *Material Terms of the Policy*

The insurance policy issued by Ambassador to Columbia Family Planning Clinic, P. C. covered

all sums which the insured shall become legally obligated to pay as damages because of injury, including death, sustained by any person while receiving treatments in the hospital or nursing home described herein, arising out of malpractice, error or mistake committed during the policy period. . . .

A. 415. The policy defined the "insured" as "the named insured and also . . . any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such." *Id.*

**7.** The Motion to Quash in the *McDowell* suit stated, in pertinent part, "[t]hat the plaintiffs . . . have named a non-existent corporation, Columbia Family Planning Clinic and Counselling Service, P. C., and therefore the alleged service of the Summons and Complaint were not proper by valid and existing corporation in the District of Columbia as indicated by the attached Affidavit. Therefore the Motion to Quash should be granted." A. 327.

**8.** The decision by Ambassador to withdraw its counsel from further participation in the *McDowell* litigation was never directly communicated to Dr. Sherman. A. 52, 260–61. In his deposition, Claims Manager Doliner explained that Ambassador's counsel withdrew from the *McDowell* case because, after the Motion to Quash had been granted, "*our insured* was no longer involved in the case." A. 260 (emphasis added). It is noteworthy that Doliner, just as did attorney Butler, A. 334, viewed the "Columbia Family Planning Clinic and Counselling Service, P. C." as the "insured" under the policy.

It is plain that, at various places in the record, both sides have used "Columbia Family Planning Clinic" and "Columbia Family Planning Clinic and Counselling Service" interchangeably. *See, e.g.,* Affidavit of Howard S. Davis, Attorney representing Ambassador, wherein he states that:

Defendant does not take the position that its duty in the *McDowell* case was limited or extinguished *solely* because of the "name" problem or the problem of corporate status. The name and corporate status problems aside defendant would have defended if the *McDowell* complaint contained allegations indicating negligence by insured individuals of the clinic—e.g. nurses, technicians, psychologists, etc.

A. 354 (emphasis in original).

**9.** The Superior Court in *McDowell* had decided to hear the punitive damage issue separately. The matter was apparently settled when the parties agreed to increase the award of compensatory damages to $525,000.00; plaintiff's claim for punitive damages was then dismissed with prejudice. A. 447.

In addition to these basic policy terms, the insurance contract included an "Endorsement No. 1," which read in part as follows:

> Physicians allowed to use the facilities of this insured shall be deemed independent contractors and not employees of the named insured. Said physicians shall maintain in full force and effect their own individual malpractice insurance and insured shall require proof of such individual malpractice insurance from each of said physicians. No physicians shall be allowed to use the facilities of this insured until such time as the above has been complied with.

A. 416. The policy also contained a specific exclusion for "personal acts or omissions of a professional nature." A. 415.

### B. Coverage for Dr. Sherman in His Professional Capacity

Ambassador asserts that it did not intend to, nor did it, provide personal insurance coverage to Robert J. Sherman for acts of negligence or malpractice in his capacity as a physician. Although the insurance policy concededly covered nurses, technicians, psychologists, and other medical personnel, *see* A. 354, Ambassador argues convincingly that practicing physicians were excluded. Ambassador further contends that Sherman had warranted that, when he acted as a physician in performance of an abortion, he (like other physicians) was an independent contractor and not an employee of the named insured; consequently, Dr. Sherman was required to "maintain in full force and effect ... individual malpractice insurance." A. 416.

Ambassador also asserts that when it wrote the original insurance policy in 1972, and the subsequent policies in 1973 and 1974, an Ambassador official made it clear that the insurance company did not intend to cover the professional omissions of Dr. Sherman. In a letter to Ambassador, dated September 26, 1972, George Lutton of Lumley, Dennant & Co., insurance agents for the Clinic, specifically asked for coverage for Dr. Sherman. A. 398. Arnold Chait, President of Ambassador Insurance Compa-

ny, replied that Ambassador could not provide coverage for Dr. Sherman as an additional insured and that it never issued individual malpractice policies. A. 399. In compliance with Ambassador's exclusion in Endorsement No. 1, Dr. Sherman secured his own professional malpractice insurance with Lloyds of London. A. 101–02.

■ Based upon these undisputed facts, we find that Dr. Sherman was on notice that he would not be covered in his professional capacity under the Ambassador policy and had no such expectation. There was no confusion over the matter—Ambassador made it clear that Dr. Sherman had to obtain professional malpractice insurance elsewhere, and he did so. Thus, we agree with the judgment of the District Court insofar as it holds that the policy issued by Ambassador Insurance Company did not cover Dr. Sherman in his professional capacity as a physician.

### C. Coverage for Dr. Sherman in His Administrative Capacities

■ The policy issued by Ambassador defined the insured as " ... the named insured and also ... any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such." A. 415. Dr. Sherman thus argues that, at the very least, he was covered under the Ambassador policy in his administrative roles. We agree. Indeed, on the unrefuted facts of this case, it can hardly be argued otherwise.

Upon receipt of a copy of the Complaint in the *McDowell* case, Ambassador's Claims Manager candidly wrote that the insurance policy covered Dr. Sherman for "his acts as administrator of Columbia Family Planning Clinic." A. 431. Even on this appeal, Ambassador does not argue that Dr. Sherman was not covered in his administrative roles. Rather, the claim is advanced that "Sherman's performance of an abortion was not 'administrative negligence' by the Clinic." Appellee's Brief at 14. Plainly, this is a different issue; even if true, appellee's contention does not nullify Dr. Sherman's as-

sertion that he was covered in his administrative capacities under the Ambassador policy. It does not matter that some portion of the liability in the *McDowell* suit was attributable to Dr. Sherman's negligence as a physician. *See Zavota v. Ocean Accident & Guarantee Corp.*, 408 F.2d 940 (1st Cir. 1969). Rather, the critical issues here concern whether the Complaint in *McDowell* raises any claims of administrative negligence and, if so, whether any portion of the award in that suit was attributable to Dr. Sherman's acts as an administrator.

With these distinctions in mind, we turn to Dr. Sherman's specific claims that (1) Ambassador breached a duty to defend him in the *McDowell* litigation, and (2) Ambassador breached a duty of indemnification by failing to reimburse him for a portion of the award that he was required to pay to settle plaintiff's suit in *McDowell*.

### III. Ambassador's Duty To Defend Dr. Sherman

Doctor Sherman strongly argues that Ambassador breached its duty to defend him as administrator of the Clinic. He bases this contention on the principle that if the allegations of a complaint state a cause of action within the coverage of a policy, the insurance company must defend. *See Boyle v. National Casualty Co.*, 84 A.2d 614 (D.C.Mun.App.1951); *S. Freedman & Sons v. Hartford Fire Insurance Co.*, 396 A.2d 195 (D.C.App.1978); *Donnelly v. Transportation Insurance Co.*, 589 F.2d 761 (4th Cir. 1978). Dr. Sherman argues that the Complaint in *McDowell* plainly stated claims for damages arising from allegations of administrative negligence by Dr. Sherman and the Clinic, including "failure to obtain informed consent;" "failure to obtain adequate history;" "failure to provide and maintain adequately trained staff, or adequate laboratory equipment and surgical equipment . . . ." Thus, appellant argues, Ambassador breached its duty to defend a claim within coverage of its policy.

■ On the basis of the record before us, appellant's claim is a compelling one. If nothing else, it is clear that the evidence presented to the District Court did not support a finding that there were no genuine issues of material facts as to whether the *McDowell* Complaint encompassed claims of administrative negligence. Indeed, all things considered, it appears more likely than not that the *McDowell* suit, in some measure, included allegations of administrative negligence. This being the case, the District Court had no basis upon which to grant appellee's motion for summary judgment on the duty to defend issue.

■ The law on this point is well-established. If an insurer refuses to defend an action against an insured based on a claim actually within the policy's coverage because it erroneously, although honestly, assumed that the claim was outside the policy's coverage, it is liable for breach of contract. *Siegel v. William E. Bookhultz & Sons, Inc.*, 419 F.2d 720 (D.C.Cir.1969); *Donnelly v. Transportation Insurance Co.*, 589 F.2d 761 (4th Cir. 1978). This is precisely the point upon which Dr. Sherman properly relies in advancing his arguments with respect to the Ambassador's breach of its duty to defend.

■ Ambassador's central argument in opposition to this claim is that, "assuming *arguendo* that the allegations of negligence in the *McDowell* Complaint could be construed . . . to be acts of 'administrative negligence,' Sherman must, nevertheless, show that the Clinic entity was a party to the judgment when it was rendered against Sherman." Appellee's Brief at 21. We reject this argument as specious. For one thing, as noted above, the parties have continuously used various names to describe the Clinic, so appellees cannot now be heard to argue that the lack of specific reference to the "Columbia Family Planning Clinic, P. C." was somehow determinative. Ambassador's counsel, upon filing the Motion to Quash in *McDowell*, apparently did not even recognize the name distinctions; he, in fact, assumed that the insurance policy had been issued to "Columbia Family Planning Clinic and Counselling Service, P. C." A. 335. His sole reason for seeking to quash service was that the entity sued "was not an existing corporation within the District of Columbia." A. 334.

Furthermore, in the action before the District Court, appellee made it clear that it did not take the position that its duty in the *McDowell* case was limited or extinguished because of some "name problem" or problem pertaining to the corporate status of the Clinic. A. 354. Appellee's belated argument relating to the confusion over the correct name of the Clinic thus appears as nothing more than *post hoc* rationalization. *See Lazarus v. Manufacturers Casualty Insurance Co.*, 267 F.2d 634 (D.C.Cir.1959); and *Siegel v. William E. Bookhultz & Sons, Inc.*, 419 F.2d 720 (D.C.Cir.1969).[10]

Finally, and most importantly, the record is clear that the Motion to Quash filed by

---

**10.** The dissenting opinion appears to urge that the insurance contract was a nullity because the Clinic was never in fact incorporated. Under this view, the dissent concludes that Dr. Sherman could not be covered as an executive officer or director under the policy because "there was no corporation." As we have noted, not even the appellee has suggested such an extreme position. Appellee, in fact, concedes that the "Clinic" (incorporated or not) was plainly covered by the insurance policy. *See, e.g.*, note 8 *supra.* It can hardly be contended otherwise since even the dissent recognizes that appellee acknowledged that it had a duty to defend the "Clinic." If the insurer had a duty to defend the Clinic, it also had a duty, under the terms of the same insurance contract, to defend the Clinic's executive officers and directors.

The insurance policy does not require that the Clinic be incorporated in order to be insured; the "P.C." designation is merely a part of the name of the Clinic as listed on the policy, not a condition of insurance. Additionally, it is absolutely clear in this case that there was no confusion over who was insured under the policy. Even after it was plainly known that the Clinic was not incorporated, and after the Motion to Quash had been granted, appellee's representatives nevertheless continued to refer to the Clinic as "our insured." *See, e.g.*, A. 260 and 442. In fact, in one letter, an Ambassador attorney referred to the Clinic as "*our insured,*" "*which is an unincorporated business of Dr. Sherman.*" A. 442 (emphasis added).

Furthermore, despite the suggestions to the contrary in the dissenting opinion, the insurance policy does not limit the coverage of "executive officers" and "directors" to officials of *incorporated* entities. Since it surely cannot be contended that unincorporated entities may not have executive officers or directors, it cannot be claimed that Dr. Sherman was without protection (for acts of administrative negligence)

appellees in *McDowell* did not terminate plaintiff's action against Dr. Sherman "trading as Columbia Family Planning Clinic and Counselling Service." It simply cannot be denied that Dr. Sherman, as an executive officer and director of the Clinic, was a specifically "insured" party under the insurance contract, at least with respect to his administrative acts.[11] Since *Dr. Sherman, trading as the Clinic*, remained as a part of the *McDowell* suit after the Motion to Quash was granted, appellees were on notice that they had a duty to defend or assist in his defense.[12]

 An insurer's duty to defend is conceptually distinct from and legally indepen-

---

because he was an executive officer and director of an unincorporated business.

Since the parties concededly intended to cover Dr. Sherman in his administrative roles as executive officer and director, this court cannot seek to nullify the parties' agreement by ignoring the plain terms of the insurance contract.

**11.** The dissenting opinion proceeds on the assumption that Dr. Sherman was neither an "executive officer" nor a "director" of the Clinic and, therefore, he was not insured against acts of administrative negligence. This assertion is difficult to understand because not even the appellee has disputed Dr. Sherman's position as an executive officer and director of the Clinic. Indeed, as noted above, the insurer's agent candidly conceded that Dr. Sherman was covered for acts of administrative negligence and appellee has not argued otherwise on this appeal. The only acts of "administrative negligence" that could have been attributed to Dr. Sherman were those taken in his capacities as executive officer or director of the Clinic. Dr. Sherman had no other position in the Clinic, except that of "physician" which was plainly excluded from coverage under the policy.

Unlike the dissent, the appellee does not raise any challenge to Dr. Sherman's title or position in the Clinic, at least insofar as insurance coverage is concerned. Rather, the appellee simply contends that the insurer had no duty to defend because Dr. Sherman's performance of an abortion was not administrative negligence by the Clinic. As shown above, this argument is a *non sequitur* in the context of this case.

**12.** Although the dissenting opinion refuses to recognize the point, it is nevertheless clear that the Motion to Quash did nothing to alter the complaint in *McDowell* against "Robert J. Sherman . . . trading as Columbia Family Planning Clinic and Counselling Service, P. C."

dent of its duty to indemnify, that is, its obligation to pay a judgment. In *S. Freedman & Sons v. Hartford Fire Insurance Co.*, 396 A.2d 195 (D.C.App.1978), the court noted that, whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, *i.e.* ultimate liability, depends rather upon the true facts. *Id.* at 197. In other words, if the allegations of a plaintiff's complaint may bring the claim within the coverage of defendant's policy, the insurance company must honor its duty to defend, even if ultimately relieved of any duty to indemnify. *See, e.g., Hazard v. Aetna Casualty & Surety Co.*, 253 F.Supp. 845 (D.D.C.1966); and *Donnelly v. Transportation Insurance Co.*, 589 F.2d 761 (4th Cir. 1979).

In the present case, we feel that appellant makes a strong argument in claiming that certain of the allegations in the *McDowell* Complaint pertained to charges of administrative negligence, not just professional malpractice.[13] Nevertheless, although the record appears to support appellant's claim with respect to the duty to defend, we will leave the final determination of this matter to the District Court on remand. We would caution, however, that unless the District Court can find with fair certainty that, as a matter of fact, the Complaint in *McDowell* did not raise any claims of administrative negligence, appellant is entitled to a favorable judgment on the duty to defend portion of his case.[14]

In determining what damages may be due for any breach of the duty to defend, the District Court should adhere to the principles set forth in *Siegel v. William E. Bookhultz & Sons, Inc.*, 419 F.2d 720, 721 (D.C.Cir.1969). In *Siegel*, we held that:

> It is well settled that an insurer's refusal to defend a claim within the coverage of a liability policy constitutes a breach of contract rendering the insurer liable to the insured for the losses resulting. The damages recoverable therefor include not only the adjudicated or negotiated amount of the claim and the insured's expenses in resisting it but also any additional loss legally traceable to the breach.

*Id.* at 723 (footnotes omitted).

## IV. Indemnification Under the Insurance Policy

■ While it appears that Ambassador may well have breached its duty to defend Dr. Sherman, it does not necessarily follow from this that appellee also breached a duty to indemnify. In other words, an insurer may be obliged to defend an insured because the complaint alleges acts of negligence that are covered by the insurance policy. Nevertheless, indemnification under the policy is not due unless the insured actually loses on, or is made liable for, claims that are covered by the policy. As was aptly noted in *Donnelly v. Transportation Ins. Co.*, 589 F.2d 761 (4th Cir. 1979):

> Although basically a duty to defend and a duty to pay are to some extent coextensive, the insurance company's

---

**13.** If, in *McDowell*, the Clinic alone had been properly sued and found liable for the *administrative acts* of Dr. Sherman, it is clear that recovery could have been had against Ambassador under the insurance policy. Ambassador concedes as much. It therefore makes no sense for Ambassador to argue that Dr. Sherman (who was an executive officer and director of the Clinic) is entitled to some lesser degree of protection under the same insurance policy for his administrative actions. *See Zavota v. Ocean Accident & Guarantee Corp.*, 408 F.2d 940, 941 (1st Cir. 1969).

**14.** As properly noted in *Boyle v. National Casualty Co.*, 84 A.2d 614 (D.C.Mun.App.1951):

> The obligation of the insurance company to defend an action against insured, as distinguished from its obligation to pay a judgment in that action, by the overwhelming weight of authority *is to be determined by the allegations of the complaint.* This obligation is not affected by facts ascertained before suit or developed in the process of litigation or by the ultimate outcome of the suit. *If the allegations of the complaint state a cause of action within the coverage of the policy the insurance company must defend.* On the other hand, if the complaint alleges a liability not within coverage of the policy, the insurance company is not required to defend. *In case of doubt such doubt ought to be resolved in the insured's favor.*
>
> *Id.* at 615–16 (emphasis added).

duty to defend its assured is usually said to be broader than its duty to pay a judgment against him . . . .

A number of reasons are specified in the just cited cases as to why a liability insurer's duty to defend may be broader than its duty to pay a judgment against its assured or to indemnify him. First, whether or not there is a duty to defend is usually determined from the pleadings in a case, but whether there is a duty to pay a judgment or to indemnify an assured who has paid usually cannot be determined until the evidence has been heard. Second, with the great latitude with which pleadings are construed today, and the great latitude of amendment, an insured's right to a defense should not be foreclosed unless such a result is inescapably necessary. Third, if a part of a plaintiff's claims against an insured fall within the coverage of a policy and part do not, the company should defend all, although it might eventually be required to pay only some, claims. Fourth, while there may be some policy considerations which preclude protecting a wrongdoer from having to pay for an intentional injury he has caused, those same policy considerations do not foreclose the defense of an accused party who has not yet been found to be guilty.

*Id.* at 765.

■ In the instant case, it appears that Dr. Sherman was sued, at least in part, for acts of administrative negligence in the *McDowell* case. However, it is unclear whether any portion of the $525,000.00 award paid to the plaintiff in *McDowell* was attributable to acts of administrative negligence by Dr. Sherman. This will be a matter for the District Court to calculate upon remand of this case. In making this determination, the District Court may consider the specific terms of the Complaint, the nature of the proofs, jury instructions, the jury's verdict, attorney briefs (if any), and any other documents or testimonial statements related to the *McDowell* case that might shed light on the matter here at issue.

We recognize that, absent a special jury verdict in *McDowell,* the District Court's calculation must of necessity be an approximation. We also recognize that the District Court might find that none of the award in *McDowell* was attributable to acts of administrative negligence by Dr. Sherman. We leave these factual determinations to the sound judgment of the trial court.

### V. Conclusion

A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R. Civ.P. 56. Following this standard, we conclude that it was plain error for the District Court to grant a summary judgment in favor of Ambassador in this case. As noted at the outset of this opinion, we affirm the decision of the District Court only insofar as it holds that Ambassador had no duty to indemnify Dr. Sherman for his professional (*i.e.*, non-administrative) acts as a practicing physician at the Clinic. However, we reverse the summary judgment in favor of appellee on all other points, and we remand this case for further proceedings consistent with this opinion.

*So ordered.*

TAMM, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that Ambassador Insurance Company (Ambassador) owed no duty to defend or to indemnify Dr. Sherman for his professional acts *qua* physician because by the terms of the policy such acts were specifically excluded from coverage. I cannot agree, however, with the majority's conclusion that there existed a duty to defend if allegations in the *McDowell* complaint, *McDowell v. Sherman,* Civil Action No. 5783–75 (D.C.Super.Ct.) [hereinafter *McDowell* ]; Appendix (A.) at 318, presented claims of administrative negligence. Because of my resolution of the duty to defend issue, I would also hold that no duty to indemnify existed in this case.

The majority states that "the critical issues here concern whether the Complaint in *McDowell* raises any claims of administrative negligence and, if so, whether any portion of the award in that suit was attributable to Dr. Sherman's acts as an administrator." Majority Op. at 257. I must disagree. The issue presented in this case is whether Dr. Sherman as a defendant in the *McDowell* case was an "insured" within the provisions of the Ambassador policy which covered the Columbia Family Planning Clinic (Clinic).[1] This was the issue presented to the district court and, accordingly, is the one that this court should resolve. I begin my analysis with a summary of the relevant law:[2]

> [U]ntil an ° action has been brought *against the insured* there is by definition no claim against which the insurer is required to defend.... The obligation ... is to be determined by the allegations of the complaint or petition in such action, and it is generally held that an insurer is under a duty to defend a *suit against the insured* where the petition or complaint in such suit alleges facts within the coverage of the policy.

14 Couch on Insurance §§ 51:39, 51:40 at 532–33 (2d ed. R. Anderson 1965) (emphasis added) (footnotes omitted).

At the risk of unnecessary repetition, I feel that I must stress what the majority addresses only in passing: a duty to defend will *not* arise regardless of whether claims within the scope of the policy coverage are alleged, if those claims are alleged against a person who is not an "insured" under the policy terms. The majority arrives at its determination that a duty to defend existed by assuming away the *real* issue presented in this case—whether an "insured" was a party in the original *McDowell* suit.

Resolution of this issue requires a brief discussion of the legal status of the Clinic. At the time the insurance policy in question was issued, Dr. Sherman represented, and Ambassador believed, that the named insured was a corporation: Columbia Family Planning Clinic, P. C. *See* Plaintiff's Statement of Material Facts As To Which No Genuine Controversy Exists, *Sherman v. Ambassador Insurance Co.*, Civil Action No. 79–1039 (D.D.C.) [hereinafter *Sherman*]; A. at 289. The *McDowell* plaintiff named as a defendant "Columbia Family Planning Clinic and Counselling Service, P.C." *McDowell*; A. at 318. Because the Clinic had been misnamed and an investigation revealed no such corporation, counsel for Ambassador moved to quash service. Deposition of Arthur V. Butler,[3] *Sherman*; A. at 34–35.

---

1. The definition-of-insured provision at issue here is contained in two places in the Ambassador Insurance Company (Ambassador) policy. Under the "Comprehensive General Liability Insurance" provision, the pertinent portion reads:

 II. Persons Insured
 Each of the following is an insured under this insurance to the extent set forth below:

 . . . . .

 (c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.
 Appendix (A.) at 301. In the "Malpractice Liability" provision is contained the following clause:
 DEFINITION OF INSURED: The unqualified word "insured" includes the named insured and also includes any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such.

A. at 308.

2. Although neither party to this case has raised the issue, I note that there is no reference by appellant to any provision in the policy that requires Ambassador to defend; nor is there reference to any provision which gives Ambassador the right to control the litigation in suits against its insured that would imply a corresponding right of the insured to require Ambassador to defend. For purposes of this case, I assume, *arguendo*, that if a suit had been filed against the insured that raised claims within the coverage of the policy, Ambassador would be required to defend. *See generally*, 14 Couch on Insurance § 51:32 at 528 (2d ed. R. Anderson 1965).

3. Arthur V. Butler was the attorney retained by Ambassador to represent the interests of Ambassador's insured in *McDowell v. Sherman*, Civil Action No. 5783–75 (D.C.Super.Ct.) [hereinafter *McDowell*]. Deposition of Arthur V. Butler, *Sherman v. Ambassador Ins. Co.*, Civil

As the majority correctly points out, "[t]he insurance policy in force at the time of Ms. McDowell's death covered 'Columbia Family Planning Clinic, P.C.,' including 'any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such.'" Majority Op. at 253. Ambassador agreed to insure an entity—the Clinic. Although it is by no means clear, it appears that if the Clinic, whatever its legal status and regardless of any misnomer, had been a party to the suit Ambassador would have had a duty to defend. That, however, was not the case. Following the successful Motion to Quash Service in *McDowell*, the Clinic was no longer a party to the case. Only a defendant who was an "insured" under the policy could trigger Ambassador's duty to defend. I turn now to the dispositive question in this case—whether Dr. Sherman was such an "insured."

Dr. Sherman was, concededly, the "administrator" of the Clinic. *See* Affidavit of Elliot Doliner,[4] *Sherman*; A. at 278–79. It does not automatically follow as night does the day, however, as the majority suggests, that because he was the administrator he was also an "executive officer and director" of the Clinic. In his affidavit in support of the Motion to Quash Service on the Clinic filed in the *McDowell* case, Dr. Sherman stated: "I am not an officer or agent or employee of the Columbia Family Planning Clinic and Counselling Service, P.C." A. at 331. Although the appellant derides Ambassador for its reliance on the confusion generated by the misnomer involving the Clinic, Brief for Appellant at 6–8, he apparently does not feel that his statements concerning the misnamed entity should weigh against him. The doctor, it seems, would like to have his cake and eat it, too. The only executive office that the doctor ever claimed to have held was president of Robert J. Sherman, M.D., P.C., which, it *is*

Action No. 79–1039 (D.D.C.) [hereinafter *Sherman*]; A. at 27.

undisputed, was not the named insured. Indeed, in the Motion for Summary Judgment filed on behalf of Dr. Sherman, it was not claimed that the Clinic was a corporation or that Dr. Sherman was an "executive officer," "director," or employee of it. Rather, appellant stated:

> The Columbia Family Planning Clinic was the operational arm of Robert J. Sherman, M.D., P.C., and the trade name of Robert J. Sherman.... Dr. Sherman was the president of Robert J. Sherman, M.D., P.C..... He was the administrator of the Columbia Family Planning Clinic.

Plaintiff's Statement of Material Facts As To Which No Genuine Controversy Exists, *Sherman*; A. at 289.

Dr. Sherman, the primary actor in this case, had unique access to all such information and still failed to allege the facts necessary for a ruling in his favor. The majority bypasses this stumbling block by simply stating that it is "undisputed" that Dr. Sherman was an executive officer and director of the Clinic. Majority Op. at 253. In interrogatories submitted to Dr. Sherman by Ambassador, however, the following exchange occurred:

> 19. State whether on July 16, 1975, you bore any of the following relationships to "Columbia Family Planning Clinic".
>
> a. Officer
>
> b. Agent
>
> c. Employee
>
> 19. [answer] Plaintiff [Dr. Sherman] was the President of Robert J. Sherman, M.D., P.C. of which Columbia Family Planning Clinic was the operational arm.

Plaintiff's Answers to Interrogatories, *Sherman*; A. at 16. Dr. Sherman has consistently and repeatedly denied the existence of the Clinic as a corporation; moreover, he has denied any relationship with

4. Elliot Doliner was Claims Manager for Ambassador at the time the *McDowell* case arose.

the Clinic as an officer, director, or employee.[5]

Appellant apparently recognized the fundamental weakness in this argument; when the crucial phrase "executive officer and director" appears in his brief, appellant has tacked on the words "and administrator." Brief for Appellant at 16. These are *not* the words of the policy; nor did Ambassador ever admit or fail to deny that Dr. Sherman was an "executive officer or director" of the Clinic as appellant and the majority repeatedly insist. *See* Brief for Appellant at 11, 14; Majority Op. at 253, 258, 259 n.13. Ambassador was never presented with an allegation that Dr. Sherman held either or both of these positions. If there was no existing corporation called Columbia Family Planning Clinic or any variation of that name, and it is clear that there was not, it is beyond my understanding how the majority can conclude that Dr. Sherman was undisputedly an "executive officer and director" of the Clinic.

I do not find at all material Ambassador's various statements concerning what it would have done had the facts of the case been different. For example, counsel for Ambassador states that "name and corporate status problems aside defendant would have defended if the *McDowell* complaint

contained allegations indicating negligence by insured individuals of the clinic,—e.g. nurses, technicians, psychologists, etc." Affidavit of Howard S. Davis,[6] *Sherman*; A. at 354. This case does not concern what Ambassador would have done, might have done, could have done, or should have done—it concerns only what Ambassador was under a *duty* to do, for the breach of which duty an action for damages would lie. On this score, the majority notes that "[a]lthough officials at Ambassador apparently understood that the insurance policy covered the Clinic, including the administrative acts of Dr. Sherman, Ambassador's counsel nevertheless was instructed to withdraw from the *McDowell* suit after the Motion to Quash had been granted." Majority Op. at 254–255. This statement, I surmise, is intended to imply that Ambassador, knowing of its duty to defend, abandoned Dr. Sherman. Stating that the policy covered the administrative acts of Dr. Sherman, however, is not the same as acknowledging a duty to defend against allegations directed at Dr. Sherman individually. The majority fails to note that the referenced statement by Ambassador was made at the time the Clinic was still a party to the *McDowell* suit.

Deposition of Elliot Doliner, *Sherman*; A. at 204.

5. In another interrogatory Dr. Sherman continued his evasive answers concerning the status of the Clinic and his relationship with it:

17. With regard to an entity known as "Columbia Family Planning Clinic" state:

a. Whether that entity was or is a lawful corporation under the laws of any jurisdiction.

b. If so, the names of that jurisdiction and date of incorporation.

c. If not a corporation, the type of business association which "Columbia Family Planning Clinic" constituted.

d. The date the entity came into being and, if it no longer exists, the date it ceased to be.

e. The names of all officers, shareholders, partners, employees, and other individuals having a financial or other business interest in "Columbia Family Planning Clinic".

f. The names of all physicians who served at any time as independent contractors of said entity, or who were permitted to use the

facilities of said entity whether or not as independent contractors.

17. [answer]

a. Columbia Family Planning Clinic was the operational arm of Robert J. Sherman, M.D., P.C., P.A., which was legally incorporated under the laws of the District of Columbia and Maryland.

b. D.C. and Maryland, 1973

c. CFPC was part of the P.C./P.A. organized by plaintiff

d. 1973; 2/76 (approx.)

e. Robert J. Sherman, Pres.
Elizabeth L. Sherman, Sec.

f. Louis Fettig, M.D.
Bardeo Balkisoon, M.D.

Plaintiff's Answers to Interrogatories, *Sherman*; A. at 15–16.

6. Howard S. Davis was counsel for Ambassador during the proceedings before the district court in the instant case. Affidavit of Howard S. Davis, *Sherman*; A. at 353.

Although appellant repeatedly cites *Zavota v. Ocean Accident & Guarantee Corp.*, 408 F.2d 940 (1st Cir. 1969), in support of his interpretation of the definition-of-insured clause, Brief for Appellant at 11–14, a careful reading of that opinion reveals that it is not only factually at variance with the instant case, but actually supports a position adverse to appellant's. In this case, as in *Zavota*, there is "no question that this policy covers the named insured...." 408 F.2d at 942. The only issue is whether it also covers Dr. Sherman. The definition-of-insured clause at issue in *Zavota* was practically identical to the Ambassador clause at issue here.[7] In *Zavota* the person in question was the vice-president, a director and a one-third stockholder of the corporation that was the named insured. In startling contrast, the case before us does not involve an existing corporation let alone an executive officer or director.

In light of the fact that the Clinic was not a corporation and that Dr. Sherman could not be an "executive officer or director," *Zavota*, in fact, supports the conclusion that Dr. Sherman was sued individually and that no duty to defend existed. In explanation of why a definition-of-insured clause covers an executive officer of a corporation, the *Zavota* court said:

Any *employee* of a corporation whose negligent act imposes ordinary tort liability on his employer is himself *personally liable to the third party*, if the third party chooses to sue. Normally employees are not sued—the corporation is richer, as well as a better target. However, a corporate officer might be a useful defendant, and consequently may be in need of insurance. The purpose of a clause like the present, in our opinion, is to protect the officer against suits wherever his con-

duct is such, in relation to the corporation, that the corporation would be liable. *Zavota*, 408 F.2d at 942 (emphasis added).

The conclusion I reach does not deny that it is plausible that the complaint in *McDowell* alleged acts of administrative negligence that may have been considered by the Superior Court as determinative of a portion of the damages for which Dr. Sherman was ultimately held liable. There should be no surprise that allegations that can arguably be considered "administrative negligence" appeared in the complaint. After all, the *McDowell* plaintiff did file suit against the Clinic as well as Dr. Sherman. It is, however, immaterial that allegations that could be considered administrative negligence on the part of the Clinic remained in the complaint. The Clinic *was no longer a party* and there could be no "executive officer or director" of a non-existent corporation. Simply put, there can be no further duty to defend where an insurance company's insured is no longer a party. Dr. Sherman was sued and defended as an individual, and as Robert J. Sherman, M.D., P.C.

In the Superior Court proceedings and in answer to interrogatories taken in the instant case, the doctor stated that the Clinic as a corporate entity did not exist and that he was not an officer or director of it. The definition-of-insured provisions are quite specific; it is only for an entity "designated in the declaration as other than an individual, partnership or joint venture," A. at 301, that an executive officer or director is also considered an insured.[8] It seems to me an inescapable conclusion that when an entity is designated as a corporation, the terms "executive officer" and "director" can take their meaning only in that context—if there was in fact no corporation there cannot have been an "executive officer" or "di-

---

7. The only material difference between the two clauses is not relevant to the disposition of this case. The Ambassador clause included the position of "partner"; the *Zavota* clause did not. *See* note 1, *supra*.

8. *See* note 1, *supra*. Although the definition-of-insured clause in the "Malpractice Liability" portion of the policy does not contain the lan-

guage relating to the designation of the named insured, it is clear from the context of the provision that the terms "executive officer, director or stockholder" relate to corporate positions. It is also clear that these terms must take their meaning from the type of entity insured, in this case a purported corporation.

rector." There was no corporation. Dr. Sherman's status, whatever it may have been in relation to the Clinic, was *not* as an "executive officer" or "director" as those terms are used in the applicable provisions of the policy.

I am not without sympathy for Dr. Sherman's plight. He did purchase insurance and pay premiums to Ambassador. Whatever Dr. Sherman's other remedies may be, one thing is clear to me, Ambassador did not breach a duty to defend in this case. It is simply wrong for this court to treat the case *as if* a corporation existed and to treat Dr. Sherman *as if* he were an executive officer or director. These are not the facts, and this decision should not rest on a hypothetical version of what the facts would have been had Dr. Sherman incorporated his Clinic as he represented to Ambassador he had. Accordingly, although Ambassador stood ready, willing and able to defend, once the Motion to Quash was granted in *McDowell*, it being clear from Dr. Sherman's own admissions and denials that he was not an "executive officer or director" of the Clinic, Ambassador had no one left to defend. Regardless of whether allegations of administrative negligence remained in the complaint, there was no duty to defend a non-insured party. These facts, which Dr. Sherman did not deny in the papers filed in connection with the Motion and Cross-Motion for Summary Judgment, were squarely presented to the district court.

After careful consideration of this case, I can only conclude that the district court was correct in granting summary judgment for Ambassador. Dr. Sherman, individually and as Robert J. Sherman, M.D., P.C., was not an insured of Ambassador. Once the Motion to Quash was granted, Ambassador had fulfilled its duty to its insured. This is precisely what the district court held; accordingly, that judgment should be affirmed in its entirety. I respectfully dissent from the majority opinion insofar as it holds otherwise.