COMMERCIAL UNION INSURANCE COMPANIES, PLAINTIFF-APPELLANT, v. CHUBB GROUP OF INSURANCE COMPANIES, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 21, 1984—Decided April 25, 1984.

Before Judges BISCHOFF, PETRELLA and BRODY.

*Robert J. Maloof* argued the cause for appellant (*Hein, Smith & Berezin,* attorneys; *Lawrence D. Smith* on the brief).

*Michael F. Nestor* argued the cause for respondent (*Tompkins, McGuire & Wachenfeld,* attorneys).

The opinion of the court was delivered by

PETRELLA, J.A.D.

As a result of a dispute over insurance coverage which arose out of the defense of a malpractice action, plaintiff Commercial Union Insurance Companies (Commercial) brought a declaratory action against Chubb Group of Insurance Companies

(Chubb). Commercial sought a determination that Chubb's professional liability insurance policy provided coverage to a doctor who was an individual defendant[1] in the underlying malpractice case, which had been settled without prejudice to litigation of the policy question. The parties cross-moved for summary judgment. Commercial appeals from a ruling adverse to its position. We reverse.

The facts are essentially undisputed. Interpretation of the insurance policy provisions is essentially a question of law and construction of the policy provisions. Summary judgment was appropriate. However, the issue is whether the trial judge correctly applied applicable law and correctly interpreted the policy provisions.

Commercial claims that it is entitled to the benefit of various rules of construction in this law suit, including an interpretation of the policy based upon reasonable expectations of the insured, and a strict construction against Chubb as draftsman of what are alleged to be ambiguous provisions of Chubb's policy. Chubb argues to the contrary.

This dispute arose out of malpractice litigation instituted in a different action on behalf of a minor against Drs. Milton L. Fischgrund, Herbert Poch and Pediatric Medical Group, P.A. (Group). Both Fischgrund and Poch were individually listed on the declaration page[2] of the Chubb insurance policy which

---

[1]This doctor was also a stockholder, director and officer of defendant Pediatric Medical Group, P.A.

[2]The line for "C. Professional Corporation Coverage" under "Part I, Professional Liability Coverage" was checked on the declaration page. Although the lines or box in front of coverage "D. Professional Employee Coverage" were not checked on the top portion of the declaration page, entries were made on the bottom half of the declaration page under "D. Professional Employees." There appears to be no dispute that Professional Employee Coverage applied to the nurses and technicians. We conclude that even the declaration page is not free from ambiguity because coverage D, although not checked, is clearly intended to be included, at least for some employees. Premiums were charged and paid for the nurses and technicians.

named the Group as insured. The limits of policy coverage were $200,000/$600,000. Chubb's policy showed the Group as named insured and specifically listed the four individuals (including Fischgrund and Poch) who constituted all of its officers, directors and shareholders under a printed statement which says, "the Partnership or Professional Corporation is composed of the following individuals ...." That policy also provided coverage for four nurses and five medical technicians who are unnamed. At the time in question Chubb had also issued a separate insurance policy to Dr. Fischgrund providing him with individual professional liability insurance with coverage of $200,000/$600,000.

Commercial had an excess policy in effect covering the applicable time period and providing excess coverage to Fischgrund and the Group.

There is no dispute that the actions of Fischgrund which gave rise to the malpractice action were performed on behalf of the Group. Fischgrund was the doctor on call for the Group at the particular time that the medical treatment of the infant was required.

---

We give limited weight to the blocks checked on the declaration page. Chubb's argument could be extended thereby to conclude that the four nurses and five medical technicians for whom separate premium charges were made might not, in its view, be covered because a check only appeared on the "Professional Corporation Coverage" line. The definition of named insured for that coverage appears to foreclose that argument.

In response to the dissent we note that underwriting determinations, mistaken or not, as to premium charges do not establish legal criteria for interpreting professional liability policy provisions. It is futile to attempt to compare Fischgrund's $502 premium with the $385 aggregate premium for the Group policy entitled "Physicians' and Surgeons' Professional Liability and Professional Premises Liability Policy." Nor, as the dissent attempts to hypothesize, is the issue advanced by attempting to break down the category premium charges to $31 for each doctor covered, particularly where Chubb has also written underlying policies for each Group member and received premiums for such coverage. Such an approach would also show *professional* liability premiums of $29 per technician and $28 per nurse times the number of nurses and technicians shown on the policy face sheet.

The medical malpractice litigation was ultimately settled for $450,000. Chubb paid $200,000 on behalf of Fischgrund under the policy it had issued covering him individually or personally. Chubb then took the position that its $200,000 policy issued to the Group provided coverage only after the excess policy issued by Commercial. When Commercial took the position that Chubb's policy issued to the Group applied before Commercial's excess policy, the insurers agreed to resolve the malpractice litigation by a settlement reserving the coverage issue for a declaratory judgment action. Commercial then contributed $250,000 to complete the settlement of the infant's malpractice claim. A warrant to satisfy judgment indicating satisfaction of the minor's claims was filed in due course. This litigation ensued.

Initially we observe that respondent's brief states that settlement in the underlying action "was tendered on behalf of Dr. Fischgrund *alone* and not on behalf of the Group." (Emphasis in brief.) We were not advised why the suit was dismissed against Dr. Poch and the Group under such circumstances. Chubb acknowledged in answers to interrogatories submitted during the course of the declaratory judgment litigation that its policy for the Group "does provide primary coverage for the Group." It also acknowledged that "that policy could conceivably come into play once Fischgrund's primary and excess policies are exhausted, if they are exhausted."

Commercial takes the position that Chubb's policy covering the Group provides primary coverage to Fischgrund. Chubb takes the position that the policy issued by it to the Group is excess to Fischgrund's individual policy and Commercial's excess policy.

Chubb's "Professional Liability and Professional Premises Liability Policy" issued to the Group provides in Part I for coverage for "all sums which the insured shall become legally obligated to pay as damages because of 'Corporate Liability' " under coverage C which the declaration page refers to as

"Professional Corporation Coverage." "Corporate Liability" coverage is defined as:

> Injury arising out of the rendering of or failure to render, during the policy period, professional services in the practice of the profession described in the declarations by any person for whose acts or omission the corporation insured is legally responsible.

The "persons insured" under this coverage is set forth in Part I as follows:

> (c) under Corporate Liability, the corporation named in the declarations and any executive officer, director or shareholder thereof while acting within the scope of his duties as such, provided that no such person shall be an insured under this paragraph (c) with respect to liability for his *personal* acts of a professional nature; .... (Emphasis added.)

The dispute here centers around the last quoted clause with respect to the exclusion for liability for personal acts of a professional nature. A similar clause appears in Chubb's policy in the partnership liability provisions. The language of this policy is not limited to medical malpractice coverage, and was obviously not intended to be so limited because of the broad language used and the reference to the particular profession involved as inserted and described on the declarations page.

In granting Chubb summary judgment the trial judge held that the "Corporate Liability" provisions of Chubb's policy covering the Group, although specifically extending coverage to officers, directors and shareholders of the Group, were only intended to protect those individuals from vicarious liability, and was not intended to provide protection with respect to professional acts committed by officers, directors or shareholders. The judge found no ambiguity in the policy provisions and hence no reason to consider whether any rules of construction were applicable. He did not discuss coverage afforded to nurses and technicians under the policy.

As we understand Chubb's argument, it would not dispute that coverage would exist for Fischgrund if Commercial's policy (or indeed any other insurance policy) was not involved in the underlying malpractice case. Chubb's letter brief argues that its "policy issued to the Group does not provide primary cover-

age to Fischgrund in this case. While it is conceivable that, given different factual circumstances, the Group's policy could come into play, those facts do not exist herein."

Chubb presently argues that the trial court had erred when it indicated that the corporate liability provision was intended to protect not only the Group, but also those doctors who would be vicariously liable for the professional malpractice of another in the Group. The trial court's position comes about by virtue of the interpretation of the policy suggested by Chubb. It seems to us that this might have raised a serious question of coverage for the other doctor named individually as a defendant in the malpractice action under the facts of that case.

We agree with Commercial that the trial judge erroneously failed to ascribe any meaningful significance to the word "personal" in the quoted exclusionary provision under "persons insured" because as a matter of law vicarious liability for medical malpractice could not be attributed to mere shareholders. Likewise, it is difficult to see how such liability could be attributed to officers and directors of the corporation for acts covered by the policy based solely on their status as officers or directors even if we considered "administrative" professional liability or malpractice. The policy language containing the word "personal" is in a proviso clause in effect constituting an exclusion. Where an exclusionary clause or an exception to coverage is involved, our cases have historically called for application of the principal of strict construction. *United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co.*, 74 *N.J.* 92, 99–100 (1977); *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur*, 35 *N.J.* 1, 7–8 (1961); *Aetna Ins. Co. v. Weiss*, 174 *N.J.Super.* 292, 296 (App.Div.1980), certif. den. 85 *N.J.* 127 (1980). Hence, we conclude that after the judge noted that the policy protected the Group itself, he erred in construing the apparent intention of the policy to protect only "those doctors who, as members of the group, would be vicariously liable for the professional malpractice of another in the group," when a principle reason

for the formation and use of the corporate form or a professional association is its inherent limitation on personal liability. *State Dep. of Env. Prot. v. Ventron Corp.*, 94 *N.J.* 473, 500 (1984); *Lyon v. Barrett*, 89 *N.J.* 294, 304 (1982); *Fletcher Cyclopedia Corporations* §§ 14 and 33 (Perm.Ed.). *Cf. N.J. S.A.* 14A:17–8.

Chubb argues that Commercial should not be given the benefit of the principles applicable to the interpretation of insurance policies because the dispute here is between two insurance companies. Although we recognize the nature of the dispute, we are nevertheless inclined to the view that these principles must be considered in this case because absent this type settlement which preserved the dispute herein, ultimately the policies would have been interpreted from the standpoint of the insured. Chubb's argument that its policy is not subject to the usual rules applicable to the interpretation of the insurance policies overlooks the significant fact of the settlement between the insurance companies of the underlying malpractice action. Absent that settlement, the insured might have been faced with a disclaimer of coverage.

As noted in answers to interrogatories, Chubb had stated that its policy could conceivably come into play once Dr. Fischgrund's primary and excess policies are exhausted. This in effect concedes coverage for Fischgrund for more than vicarious responsibility as an officer, director or shareholder. Moreover, Chubb's argument leads to the exclusion of coverage under this policy for the doctor for all acts of a professional nature whether or not done for the Group. The average insured would hardly understand such a result nor willingly purchase such a limited policy.

Because Commercial's policy is admittedly an excess policy, another method of analysis is to consider if we would hold there would be coverage under Chubb's policy absent the Commercial policy. It is clear that there would be coverage. In the first place, as we indicated before, Chubb concedes there would be

coverage. Secondly, Chubb argues that because the settlement was tendered on behalf of Fischgrund alone, corporate coverage is not implicated. That argument relies on the form of settlement rather than the fact of settlement. It is undisputed that Fischgrund's malpractice, if any, was committed while he was acting on behalf of the Group, and thus subjected the Group to liability for malpractice. The Group purchased and Chubb issued the Group a policy to cover such a situation. The form or the words of settlement should not obscure the fact of settlement. The fact is that the Group here was subjected to potential liability for Fischgrund's negligence. The fact also is that the settlement terminated the potential liability of both Fischgrund and the Group. The fact is that by the settlement the Group received the protection it bargained for when it purchased the Group policy from Chubb. The only Group policy is Chubb's. It is within the reasonable expectations of the insured (the Group) and the insuror (Chubb) that any such liability would be assumed by Chubb. This obligation is not eliminated by the simple statement that the settlement was made on behalf of Fischgrund only.

Doubt or ambiguity in a policy is generally resolved in favor of the insured as against the drafter of the policy and in favor of coverage. See, *e.g., Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567, 576 (1970); *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, supra,* 35 *N.J.* at 7; *Kook v. American Surety Co. of N.Y.,* 88 *N.J.Super.* 43, 52 (App.Div.1965). Likewise, exclusionary language in a policy must not only be plain and clear, but must be strictly interpreted. *Gerhardt v. Continental Ins. Companies,* 48 *N.J.* 291, 296 (1966); *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, supra.* The policy here must be read so as to fulfill "the reasonable expectations of the average purchaser in the light of the contract language." *Linden Motor Freight v. Traveler's Ins. Co.,* 40 *N.J.* 511, 525 (1963); *Allen v. Metropolitan Life Ins. Co.,* 44 *N.J.* 294, 305 (1965). At the very least we consider the disputed language to be ambiguous and to require a construction against Chubb.

*Bryan Constr. Co. v. Employer's Surplus Lines Ins. Co.,* 60 *N.J.* 375 (1972) and *Butler v. Bonner & Barnewall, Inc., supra,* 56 *N.J.* at 567. The argument of the dissenting opinion serves to demonstrate at the very least the policy provisions here are ambiguous. This would also mandate reversal and entry of judgment in favor of Commercial.

The policy exclusion does not preclude coverage for all professional acts, but only for professional acts of a "personal" nature. For example, such acts would include treatment of medical patients that the individual assured handled not as part of the Group's practice, but on a solely private basis, or perhaps actions which might arise as a result of a "Good Samaritan" situation. See *N.J.S.A.* 2A:62A-1, *et seq.* We conclude that coverage was intended and is provided in the Chubb Group policy for a doctor who is a member of the Group, or an employee of the Group and who acts on behalf of the Group or the other members of the Group. If the contract of insurance written by Chubb intended to afford only coverage for vicarious liability of officers, directors [4] and shareholders in that capacity alone, then the word "personal" is superfluous and the policy would afford very little if any coverage.

We cannot disregard the word "personal" as a limitation on the exclusion because it is assumed that Chubb did not employ superfluous or meaningless words. *Cf. Gabin v. Skyline Cabana Club,* 54 *N.J.* 550, 555 (1969); *Abbots Dairies v. Armstrong,* 14 *N.J.* 319, 327–328 (1954). See, *Appleman, Insurance Law and Practice,* § 7384 at pages 49–50 (1976).

We find Chubb's reliance on *Sherman v. Ambassador Ins. Co.,* 670 *F.*2d 251 (D.C.Cir.1981) both unpersuasive and inapposite. Our research has not uncovered any other published opinion which cites *Sherman.* There the claim pursued was essentially against Dr. Sherman for medical malpractice in

---

[4]Officers and directors are normally considered employees of a corporation or professional association.

connection with his treatment of his patient at his abortion clinic. Sherman owned the professional corporation which had been misnamed in the complaint. Plaintiff, decedent's representative, never sought to amend after the misnamed corporate defendant was dismissed on Ambassador's motion. As a result, Ambassador, the corporation's insurer, no longer participated in the malpractice trial. The underlying litigation continued against Sherman, and not for any act performed for any employer, group or corporation.

The policy covering Sherman's corporation contained a specific endorsement requiring every physician to have his own individual malpractice insurance policy and stating that every physician would be considered an independent contractor. The original correspondence between Sherman and the insurance company when the policy had been applied for specifically put Sherman on notice that Ambassador would not cover him as an additional insured because it did not write individual professional liability policies. The court in *Sherman* affirmed the trial judge only on the finding of no personal coverage as a practicing physician, relying on various facts, including a specific policy endorsement and the correspondence at inception concerning limited policy coverage. The court observed that the doctor there had expressly been placed on notice before the policy was issued that there was no coverage for his professional practice by the specific endorsement to the policy. *Id.* at 256. There had also been an early disclaimer. The *Sherman* court concluded that under the circumstances no confusion could have existed between the carrier and the doctor that he was not covered for his professional work under this policy. *Ibid.* However, it reversed the rest of the trial judge's summary judgment determinations of noncoverage in favor of Ambassador, in part because it found that the policy provided coverage for " 'his acts as administrator of Columbia Family Planning Clinic' " (*ibid.*), and the appeals court felt there were fact issues of potential administrative negligence.

Nor does *Maryland Cas. Co. v. N.J. Mfrs., etc., Ins. Co.,* 48 *N.J.Super.* 314 (App.Div.1958), aff'd 28 *N.J.* 17 (1958), furnish any controlling authority here. There, subrogation was allowed between an employer (through its insurer) seeking coverage under the omnibus provision of defendant tortfeasor's loading and unloading policy against its *noninsured* employee. That case narrowly construed an exclusion clause where an employee of the named insured was not suing the named insured. (48 *N.J.Super.* at 324). Essentially indemnification was allowed the employer (or its insurance carrier) against its employee or agent. We find the insurance policy provision therein discussed hardly comparable with the instant professional liability policy, which of necessity means malpractice coverage.

Even absent an express policy subrogation provision, we take it the potential might exist for Chubb to have a common law right of indemnification against other than a named insured.

Reversed and remanded for entry of judgment in favor of plaintiff in accordance with this opinion.

BRODY, J.A.D., dissenting.

The dispute between these two carriers is over which must pay the excess loss after the doctor's $200,000 malpractice policy has been exhausted. Chubb contends Commercial should pay on its excess policy that covers "the ultimate net loss" to the doctor. Commercial contends that recourse must first be had to the coverage afforded the doctor as an individual under Chubb's corporation policy. The parties have presented us with a single issue to decide: does the coverage afforded an individual doctor in the corporation policy include coverage for his malpractice. In my view it does not and therefore I must dissent.

The corporation policy covers the corporation for its vicarious liability stemming from the malpractice of "any person for whose act or omission the corporation insured is legally respon-

sible." The policy also affords coverage to the doctor individually as an "executive officer, director or shareholder [of the corporation] while acting within the scope of his duties *as such* ...." (Emphasis added.) That provision covers the doctor for administrative negligence, not malpractice.[1] *Sherman v. Ambassador Ins. Co.,* 670 *F.*2d 251, 256–257 (D.C.Cir.1981).

Commercial contends that a clause that excludes "liability for his personal acts of a professional nature" from liability coverage for administrative negligence has the effect of providing the doctor malpractice coverage where none exists elsewhere in the policy. This contention is illogical and contrary to "the basic principle that exclusion clauses *subtract* from coverage rather than grant it." *Weedo v. Stone-E-Brick, Inc.,* 81 *N.J.* 233, 247 (1979) (emphasis in original).

Even if we were free to interpret the exclusionary clause to grant malpractice coverage, the interpretation urged upon us and adopted by the majority is strained. "Personal acts of a professional nature" means "malpractice," not "malpractice upon private patients" as distinguished from corporation patients. There is no evidence that this pediatrician treated patients privately outside the corporate practice. The policy in *Sherman* also had an exclusion for "personal acts or omissions of a professional nature" yet the court limited the corporation policy to cover the doctor for administrative negligence only. Acts are "personal" when they are not performed "while acting within the scope of his duties" as an executive officer, director or stockholder.

---

[1]Administrative negligence is a recognized category of negligence distinct from vicarious liability and from liability for directly causing injury to another. See discussion of administrative negligence in *Schultz v. The Roman Catholic Archdiocese of Newark,* 95 *N.J.* 530 (1984), a case involving an employer's allegedly negligent hiring. The majority opinion creates confusion by using the mislabel "administrative malpractice," *supra* at 75. I agree with the majority that the judge erred when he concluded that the individual coverage provided the doctor in the corporation policy is for vicarious liability.

I see no material basis for distinguishing *Sherman*. The district court found in that case that the doctor negligently performed an abortion as an employee of the insured Columbia Family Planning Clinic, P.C., a corporation he headed. *Id.* at 253.

Chubb's corporation policy turns out to be quite a bargain thanks to the majority opinion. The doctor paid Chubb an annual premium of $502 for $200,000/$600,000 malpractice insurance provided by his individual policy. The corporation policy now affords him virtually the same coverage together with coverage for administrative negligence and also covers the corporation in the amount of $200,000/$600,000 for its liability as a result of his malpractice—all for an annual premium attributed to the doctor of $31. This extraordinary departure from the reasonable expectation of the parties is a signal that something is very wrong with Commercial's position which the majority has now embraced.

In their opinion, *supra* at pp. 76–77, the majority find the result below unjust on a mistaken view of the law of primary and secondary liability coverage. Where one liability policy covers an employee for his own negligence and another covers his employer for the same negligence, the employee's policy must first be exhausted before the employer's carrier may be called upon to pay. This reflects the common-law rule that a negligent employee must indemnify his employer whose liability is only vicarious. *Maryland Cas. Co. v. N.J. Mfrs. &c., Ins. Co.*, 48 *N.J.Super.* 314, 327–328 (App.Div.1958), aff'd 28 *N.J.* 17 (1958). Here that indemnification is implemented by a clause in the corporation policy wherein Chubb is "subrogated to all the insured's rights of recovery ... against any person...."

In my view if Chubb had paid the injured party in response to the corporation's vicarious liability coverage, it would be entitled to indemnification from Commercial for so much of the payment as exceeded the doctor's basic malpractice coverage

under Chubb's individual policy. To avoid a "circuity of action," the Chubb policy covering the doctor individually for malpractice and Commercial's excess policy which expands his individual malpractice coverage must pay the injured party before the Chubb corporation policy is called upon to pay for the corporation's vicarious liability. *See Maryland Cas. Co. v. N.J. Mfrs. &c., Ins. Co., supra,* at 328. The majority's strained reading of Chubb's corporation policy unfairly shifts to Chubb the obligation Commercial undertook when it wrote the doctor's excess liability policy.

I would affirm.