**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2847-24

PRINCETON INSURANCE
COMPANY,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

CURI/MEDICAL MUTUAL
INSURANCE COMPANY
OF NORTH CAROLINA,

     Defendant-Respondent/
     Cross-Appellant,

and

KENNEDY HEALTH ALLIANCE,

     Defendant.

_____

Submitted March 24, 2026 – Decided May 1, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3356-23.

Saiber LLC, attorneys for appellant/cross-respondent (Jennine DiSomma, of counsel and on the briefs; Vincent C. Cirilli, on the briefs).

Thomas Thomas & Hafer, LLP and Mark D. Malloy (Meissner, Tierney, Fisher & Nichols SC) of the Wisconsin, Illinois and Minnesota bars, admitted pro hac vice, attorneys for respondent/cross-appellant (Gregory C. Kunkle and Mark D. Malloy, on the briefs).

PER CURIAM

In this insurance coverage declaratory judgment action, defendant CURI/Medical Mutual Insurance Company of North Carolina (MMIC) and plaintiff Princeton Insurance Company (PIC) cross-appeal from a January 31, 2025 order granting in part and denying in part their cross-motions for summary judgment. PIC also appeals from an April 25, 2025 order denying its motion for reconsideration. We reverse the January 31 order to the extent it denied MMIC's motion for summary judgment and granted PIC's cross-motion.

I.

The relevant facts are uncontroverted. The dispute in this case is over the parties' respective obligations to pay the $1.5 million settlement of an underlying medical malpractice lawsuit against Kennedy Health Alliance (KHA) and its employee, Dr. Adeshola Fakulujo (malpractice action). In the malpractice action, the plaintiffs alleged Dr. Fakulujo committed malpractice, and KHA was

2

jointly and severally vicariously liable for his malpractice. MMIC and PIC agreed to settle the malpractice action by each paying $750,000 toward the settlement, subject to their rights to litigate their respective obligations to pay the settlement and defense costs incurred in connection with the malpractice action.

KHA obtained a professional liability insurance policy from PIC with applicable limits of liability of $1 million for each claim (PIC policy). The insuring agreement of the PIC policy provides, in relevant part, that PIC "will pay on behalf of [KHA] . . . 'damages' and 'defense expenses' for 'claims' for 'injury' to which this insurance applies caused by the rendering or failure to render 'professional services.'" There is no dispute that the PIC policy affords coverage for KHA's alleged liability in the malpractice action. There is also no dispute that Dr. Fakulujo is not an insured under the PIC policy, and the PIC policy does not afford coverage to him personally for his medical malpractice.

KHA, as the named insured, obtained a second professional liability insurance policy from MMIC (MMIC policy). The "insuring agreements" section of the professional liability coverage part of the MMIC policy contains three different and independent types of insurance: (1) entity liability (EL); (2)

A-2847-24

physician's and surgeon's professional liability (PL); and (3) designated employee liability (DE).

The MMIC policy provides that "[i]n consideration of the payment of premium, in reliance upon the statements in the [d]eclarations made a part hereof, and subject to all of the terms of this policy, we agree with the . . . named insured in the [d]eclarations to provide insurance as follows." The "[d]eclarations" page of the MMIC policy lists only the PL and DE coverages and sets forth limits of liability applicable only to those coverages. The declarations page does not list EL coverage or set forth limits of liability applicable to EL coverage. Specifically, the declarations page provides:


**Medical Mutual™**
PROTECTING OUR PROFESSION

Medical Mutual Insurance Company
of North Carolina
305 North Front Street
P.O. Box 11820
Harrisburg, PA 17108-1820
Tel: 717-237-2700
Toll Free: 866-379-9816
Fax: 717-237-2735

NAMED INSURED:
Kennedy Health Alliance
2201 Chapel Ave West Ste 100
Cherry Hill NJ 08002

ISSUE DATE: 09/06/2016
POLICY NUMBER: ▆▆▆▆▆
LICENSE NUMBER: N/A
COUNTY: N/A
TERRITORY: N/A
EFFECTIVE DATE: 09/23/2016
(12:01 A.M. Standard Time at the Address of Named Insured)
EXPIRATION DATE: 09/23/2017
(12:01 A.M. Standard Time at the Address of Named Insured)

DECLARATIONS
MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA
PROFESSIONAL LIABILITY INSURANCE

| COVERAGE(S) | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|
| PHYSICIAN'S AND SURGEON'S PROFESSIONAL LIABILITY (PL) | $1,000,000 EACH MEDICAL INCIDENT $3,000,000 ANNUAL AGGREGATE | $ |
| DESIGNATED EMPLOYEE LIABILITY (DE) | $1,000,000 EACH MEDICAL INCIDENT $3,000,000 ANNUAL AGGREGATE | |
| TOTAL PREMIUM: | | $ |
| PLIGA: | | $ |

A-2847-24

"Section V[-]persons insured" of the MMIC policy provides that "[e]ach of the following is an insured under this policy":

> (a) the named insured;
>
> (b) under EL, the insured entity, and any officer, partner, member, or stockholder thereof with respect to the acts or omissions of others, provided no officer, partner, member, or stockholder of an insured entity shall be an insured under this subparagraph with respect to liability for his or her personal acts;
>
> (c) under PL, any physician for whom such coverage is afforded under this policy as indicated in the [d]eclarations page;
>
> (d) under DE, any employee . . . for whom such coverage is afforded under this policy as indicated in the [d]eclarations page while working within the scope of [their] duties at the direction of the named insured or insured entity.

The definitions section of the MMIC policy provides, "[n]amed insured means the person(s) or organization(s) designated as the named insured in the [d]eclarations of this policy." The term "[i]nsured means any person or organization qualifying as an insured under [s]ection V-[p]ersons insured provisions of this policy." "Insured entity means any corporation, partnership, association, limited liability company, or joint venture designated and scheduled as an insured on this policy."

A-2847-24

The PL insuring agreement provides, in relevant part, "[w]e will pay on behalf of an insured scheduled on this policy all sums that the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . caused by a medical incident to which this insurance applies." The MMIC policy contains a "schedule of physicians" that provides "[c]overage for the individuals named below is limited to medical professional services performed for the named insured only." The endorsement lists Dr. Fakulujo and others as insureds under the PL insuring agreement.

The DE insuring agreement similarly provides, in relevant part, "[w]e will pay on behalf of an insured scheduled on this policy all sums that the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . caused by a medical incident to which this insurance applies." The MMIC policy contains a "schedule of designated employees" that provides "[c]overage for the individuals named below is limited to medical professional services performed for the named insured only." The endorsement lists a registered nurse and two nutritionists as insureds under the DE insuring agreement.

The EL insuring agreement of the MMIC Policy provides, in relevant part, "[w]e will pay on behalf of an insured all sums that an insured shall become

A-2847-24

legally obligated to pay as damages because of . . . bodily injury . . . caused by a medical incident to which this insurance applies."  The limits of liability section of the MMIC policy applicable to EL coverage provides, "[o]ur total liability for all damages because of all bodily injury . . . shall not exceed the limit of liability stated in the [d]eclarations as the aggregate as respects EL" and "[o]ur total liability for all damages because of all bodily injury . . . arising from any one medical incident shall not exceed the limit of liability stated in the [d]eclarations as applicable to each medical incident as respects EL."

The MMIC policy also contains an endorsement titled "NO ENTITY COVERAGE–CLAIMS MADE," which amends the claims made coverage provisions of all the insuring agreements as well as an exclusion unrelated to the issues raised on this appeal.

## II.

PIC filed a three-count declaratory judgment complaint against MMIC and KHA.  It alleged:  (1) KHA "is an insured under the . . . MMIC [p]olicy entitled to EL coverage for the" malpractice action; (2) the "EL coverage for KHA under the . . . MMIC policy is primary to coverage under the" PIC policy based on the "'[o]ther [i]nsurance' provisions contained in the . . . MMIC [p]olicy and the [PIC] [p]olicy"; and (3) MMIC is obligated to reimburse PIC

7

for defense costs PIC incurred defending KHA in the malpractice action because "EL coverage exists for KHA" and "is primary to coverage under the [PIC] [p]olicy."

After the close of discovery, PIC moved for summary judgment and MMIC cross-moved for summary judgment. On January 31, 2025, following oral argument, the court entered an order granting and denying both motions in part supported by an oral opinion.

With respect to PIC's claim that the MMIC policy provides EL coverage for KHA, the court found KHA "is insured under the policy and the language . . . does not exclude it." The court found "the named insured always has the most coverage" and the court had "never heard of an entity listed as the named insured . . . and there not being coverage."

Having determined the MMIC policy affords EL coverage to KHA, the court turned to the other insurance provisions of the policies. It found "[b]oth . . . policies are primary policies" and there is "absolutely no indication in the dec[laration] sheets that one was basically written up as a pure excess." The court stated the applicable limits of the MMIC policy and the PIC policy are both $1 million, "[s]o it looks like it[ is] [fifty]/[fifty]."

A-2847-24

Next, the court addressed PIC's claim that the MMIC policy must be exhausted before the PIC policy is triggered based on <u>Commercial Union Insurance Companies v. Chubb Group of Insurance Companies</u> (<u>Commercial Union II</u>), 101 N.J. 24 (1985). The court noted that in <u>Commercial Union II</u>, our Supreme Court reversed the Appellate Division's decision in <u>Commercial Union Insurance Companies v. Chubb Group of Insurance Companies</u> (<u>Commercial Union I</u>), 194 N.J. Super. 69 (App. Div. 1984) "substantially for the reasons expressed in the dissenting opinion" and "the Supreme Court adopted it. It[ is] the law."

Specifically, the dissenting judge in <u>Commercial Union I</u>, after addressing the limited issue before the court in that case, concluded that "[w]here one liability policy covers an employee for his own negligence and another covers his employer for the same negligence, the employee's policy must first be exhausted before the employer's carrier may be called upon to pay." 194 N.J. Super. at 82 (Brody, W., dissenting). The dissenting judge reasoned that "[t]his reflects the common-law rule that a negligent employee must indemnify his employer whose liability is only vicarious." <u>Ibid.</u>

The dissenting judge found "that indemnification is implemented by a clause in the [employer's] policy wherein [the employer's insurer] is 'subrogated

A-2847-24

to all the insured's rights of recovery . . . against any person.'" Ibid. The judge, in reliance on Maryland Casualty Company v. New Jersey Manufacturers (Casualty) Insurance Company, 48 N.J. Super. 314 (App. Div. 1958), determined that "[t]o avoid a 'circuity of action,' the . . . policy covering the [employee] individually . . . must pay the injured party before the [employer's] . . . policy is called upon to pay for the [employer's] vicarious liability." Id. at 83.

In addressing PIC's claim, the court stated it was not clear "whether or not [the Supreme Court] actually adopted" that portion of the dissenting opinion and stated, "maybe they did, maybe they did[ not]." Based on the dissent in Commercial Union I, the court concluded the MMIC policy affording malpractice coverage for Dr. Fakulujo must be exhausted before the PIC policy is called upon to pay for KHA's vicarious liability.

Ultimately, the court determined MMIC must pay $1 million toward the settlement of the malpractice action and PIC must pay $500,000. The court rejected PIC's claim for reimbursement of defense costs incurred defending KHA in the malpractice action because it had a duty to defend KHA. PIC moved for reconsideration, which the court denied on April 25, 2025. This appeal followed.

On appeal, MMIC contends the court erred in: (1) finding the MMIC policy affords EL coverage to KHA; and (2) ruling that principles of contribution require exhaustion of the MMIC policy before PIC's policy is triggered. On its cross-appeal, PIC contends: (1) the MMIC policy affords EL coverage to KHA "with separate limits from Dr. Fakulujo"; (2) KHA is also entitled to coverage under the PL coverage part of the MMIC policy; (3) the "other insurance" clauses in the policies "make MMIC primary and [PIC] excess" and "MMIC must pay the remaining settlement amount of $500,000 on behalf of KHA"; and (4) "MMIC must reimburse [PIC] for the attorneys' fees and costs that it paid on behalf of KHA" in connection with the malpractice action.

III.

Our review of a trial court's grant or denial of a motion for summary judgment is de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We apply the same standard as the trial court and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

11

The interpretation of an insurance policy constitutes a question of law. Powell v. Alemaz, Inc., 335 N.J. Super. 33, 37 (App. Div. 2000). An insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012)).

"In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "If the plain language of the policy is unambiguous, we will 'not "engage in a strained construction to support the imposition of liability" or write a better policy for the insured than the one purchased.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)).

IV.

Based on our de novo review, we are convinced the court incorrectly determined the MMIC policy affords EL coverage to KHA. The professional liability coverage part of the MMIC policy expressly states coverage is afforded

12

"[i]n consideration of the payment of premium, [and] in reliance on the statements in the [d]eclarations made part hereof." The declarations page of the MMIC policy clearly provides that the only coverages afforded by the policy are PL and DE. The MMIC policy does not include EL coverage because it is not included in the declarations page as one of the coverages afforded by the policy.

Consistent with this interpretation, the claims made coverage endorsement to the MMIC policy expressly states "NO ENTITY COVERAGE" is included in the policy. Additionally, the limits of liability section of the MMIC policy applicable to EL coverage provides that such coverage, if afforded, "shall not exceed the limit of liability stated in the [d]eclarations . . . as respects EL." It is undisputed the declarations page does not include any applicable limits of liability "as respects EL."

In addition, the declarations page indicates MMIC only charged KHA premiums for PL and DE coverage. There is no premium listed for EL coverage and PIC does not offer any evidence to show KHA paid a premium for EL coverage. Based on the plain language of the MMIC policy—including the professional liability coverage part, the declarations page, the "no entity coverage-claims made" endorsement, and the limits of liability section—the

13

language is clear that the MMIC policy does not include EL coverage for any person or entity, including KHA.

We decline to consider PIC's contention, which was not asserted in its complaint, that KHA is entitled to coverage under the PL insuring agreement. Generally, we refuse to consider arguments that are raised for the first time on appeal. State v. Galicia, 210 N.J. 364, 383 (2012). Even if we were to consider PIC's argument, we are convinced it lacks merit.

The persons insured provision of the MMIC policy provides that PL coverage is afforded for "any physician for whom such coverage is afforded under this policy as indicated in the [d]eclarations page." The insuring agreement of the PL coverage part affords coverage "on behalf of an insured scheduled on this policy." The "schedule of physicians" applicable to the PL coverage part provides that "[c]overage for the individuals named below is limited to medical professional services performed for the named insured only." KHA is not included as an insured on the schedule and is not "an insured scheduled on this policy" for purposes of the PL insuring agreement, nor is it a "physician . . . as indicated in the [d]eclarations page" entitled to coverage under the PL insuring agreement.

A-2847-24

V.

We are unconvinced by PIC's argument that MMIC's limits of liability must be exhausted before the PIC policy is triggered based on principles of common law indemnity. The court determined MMIC's policy must be exhausted before PIC's policy is triggered based solely on the dissent in Commercial Union I. The relevant portion of the dissent, however, was non-binding dicta.

In Commercial Union I, the sole issue presented on appeal was whether a "professional liability insurance policy" issued to a medical group also "provided coverage to a doctor who was an individual defendant." 194 N.J. Super. at 71. Indeed, the dissenting judge recognized the court was "presented . . . with a single issue to decide: does the coverage afforded an individual doctor in the corporation policy include coverage for his malpractice[?]" Id. at 80 (Brody, W., dissenting). In his dissenting opinion, however, after addressing that limited question, the judge also opined on the issue of priority of coverage between that "corporation policy" and an excess policy. Ibid. We do not read the Supreme Court's opinion as adopting that portion of the dissenting opinion. See Commercial Union II, 101 N.J. at 24.

A-2847-24

It was that section of the dissenting opinion that the trial court relied on in granting PIC's motion and on which PIC relies on appeal. Because that section of the dissent was extraneous to the issue presented on appeal, it represents non-binding dicta. See K.D. v. A.S., 462 N.J. Super. 619, 628 (App. Div. 2020) ("Dictum is a statement by a judge 'not necessary to the decision then being made[,]' and 'as such it is entitled to due consideration but does not invoke the principle of stare decisis.'") (quoting Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015)).

We are unpersuaded by PIC's argument, unsupported by any language contained in the insurance policies at issue, that principles of common law indemnity require exhaustion of the MMIC policy before the PIC policy is triggered. Importantly, PIC's coverage obligations are determined by the terms of the PIC policy as applied to the claims asserted in the malpractice action. PIC concedes KHA is an insured under the PIC policy and the claims asserted against KHA are covered by the PIC policy. Moreover, the PIC policy is not an excess policy.

In the malpractice action, KHA was alleged to be jointly and severally liable with Dr. Fakulujo for the full amount of any verdict. KHA's alleged liability, therefore, included the full amount of any judgment plaintiffs obtained,

16

without regard to any right of recovery KHA may have against Dr. Fakulujo based on common law indemnity. In addition, neither KHA's liability to the plaintiffs in the malpractice action nor PIC's obligation to provide insurance coverage to KHA in connection with the malpractice action was limited to amounts in excess of Dr. Fakulujo's available insurance coverage. KHA is jointly and severally liable for the full amount of any judgment in, or settlement of, the malpractice action, and PIC is obligated to afford insurance coverage to KHA up to its limits of liability notwithstanding any possible claim KHA may have for common law indemnity from Dr. Fakulujo.

PIC's argument misconstrues the nature of common law indemnity. Under common law indemnity, "[a] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." Polidori v. Kordys, 217 N.J. Super. 424, 433 (App. Div. 1987) (citation omitted).

Here, to the extent KHA was vicariously liable for Dr. Fakulujo's negligence, KHA may have the right to assert a claim for common law indemnity against Dr. Fakulujo. KHA does not have a right to pursue a direct action against MMIC. See Cruz-Mendez v. Isu/Insurance Servs., 156 N.J. 556, 566-67 (1999)

17

(explaining that as a general rule, an injured third party may not maintain a "direct action" against the tortfeasor's insurer until damages have first been fixed by a final judgment or settlement) (citing <u>Tuckey v. Harleysville Ins. Co.</u>, 236 N.J. Super. 221, 226 (App. Div.1989)).  The fact that KHA may have a right to common law indemnification against Dr. Fakulujo is irrelevant to the question of priority of insurance coverage afforded by the PIC policy and the MMIC policy.

PIC's argument that its policy is not triggered because it is subrogated to KHA's right to seek common law indemnity from Dr. Fakulujo is unavailing. PIC's right to subrogation only arises "[i]n the event of any payment under [the PIC] policy." PIC cannot, as it attempts to do here, use the possibility of a future right to subrogation preemptively to defeat coverage under its policy.  PIC's right to subrogation arises only <u>after</u> it pays a covered claim.  PIC did not have a right to subrogation merely because its insured is allegedly liable and, therefore, cannot rely on the subrogation provision in its policy in support of its priority of coverage argument.

In addition, PIC would only be subrogated to KHA's "rights of recovery against any person or organization."  As discussed, KHA's right to recovery based on common law indemnity would be against Dr. Fakulujo, not MMIC.

Neither KHA nor PIC would be able to maintain a direct action against MMIC for common law indemnity. By claiming MMIC is obligated to exhaust its limits before the PIC policy is triggered based on principles of common law indemnity, that is effectively what PIC is attempting to do. There is no basis, therefore, for PIC's claim that principles of common law indemnification require MMIC to exhaust its limits of liability before the PIC policy is triggered.

We are not persuaded that principles of common law indemnity can override the express terms of the insurance policies at issue. PIC is obligated, pursuant to the express terms of its policy, to pay the full amount of KHA's liability in the malpractice action without regard to any right to common law indemnification KHA may have against Dr. Fakulujo.

Our decision in Maryland Casualty does not dictate a different result. There, the employer's insurer asserted a claim for common law indemnification against the tortfeasor employee and the employee's insurer based on its right to subrogation after paying a covered claim. Maryland Casualty, 48 N.J. Super. at 318-19. We determined, under those circumstances, that the employer's insurer should be permitted to assert an indemnification claim, based on its right to subrogation, against the employee's insurer to prevent "circuity of action." Id. at 328.

A-2847-24

We did not conclude, as PIC argues here, that the limits of the employee's insurer's insurance policy had to be exhausted before the employer's policy was triggered. The question of priority of coverage was not implicated in that case because the employer's insurer had already paid a covered claim and was seeking reimbursement based on its right to subrogation. Nor did we conclude, as PIC attempts to do here, that the employer's insurer did not need to actually assert a claim for indemnification against the tortfeasor employee or the employee's insurer to obtain reimbursement.

In this case, PIC did not assert a claim for reimbursement based on common law indemnity against Dr. Fakulujo or MMIC. The question of whether PIC now has a right to seek common law indemnification from Dr. Fakulujo or MMIC is not before us on this appeal, and we offer no opinion on the viability of such a claim if it is brought in the future.

PIC's arguments relating to the applicable limits of liability under the MMIC policy, the "other insurance" provisions of the policies, and the recovery of defense costs are premised on its claim that KHA is entitled to EL coverage under the MMIC policy. Because we concluded it is not, we need not address those arguments.

A-2847-24

We reverse the January 31, 2025 order to the extent it found KHA is entitled to EL coverage under the MMIC policy and MMIC must exhaust its applicable $1 million limit of liability before the PIC policy is triggered. PIC and MMIC are each responsible for one half of the settlement amount as they previously paid. PIC is not entitled to reimbursement of defense fees and costs it paid on behalf of its insured, KHA, in connection with the malpractice action because it owed KHA an independent duty to defend and its claim for reimbursement is based on the contention that KHA is entitled to EL coverage under the MMIC policy, which we reject.

Reversed and remanded for the entry of judgment in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2847-24